IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **CONNECTICUT GENERAL LIFE INSURANCE COMPANY; CIGNA HEALTH AND LIFE INSURANCE COMPANY**<br><br>**PLAINTIFFS,**<br><br>**V.**<br><br>**HEALTH DIAGNOSTIC LABORATORY, INC.**<br><br>**DEFENDANT** | CIVIL NO. 3:14-cv-01519-VAB<br><br><br>**ORAL ARGUMENT REQUESTED**<br><br><br>APRIL 9, 2015 |

**CIGNA'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS THE AMENDED COMPLAINT**

**PRELIMINARY STATEMENT** ...................................................................................1

**BACKGROUND** ......................................................................................................3

**ARGUMENT** ...........................................................................................................8

**I.    CIGNA'S STATE LAW CLAIMS ARE PROPERLY PLED.** .............................8

    A.    Cigna's State Law Claims Are Not Preempted By ERISA. ....................................8

    B.    HDL's Deceptive Billing Breached Its Common-Law Duties and Harmed Cigna and the Plans. ..........................................................................................11

        (1)    HDL Has a Common-Law Duty to Honestly Bill Cigna. ..........................11

        (2)    Cigna Adequately Alleges Harm from HDL's Fee-Forgiving Scheme. ..............................................................................................12

    C.    Cigna Adequately Alleges Fraud. ..........................................................................14

    D.    Cigna's Other State Law Claims are Properly Pled. ............................................17

**II.   CIGNA'S ERISA CLAIM IS PROPERLY PLED.** ...........................................20

    A.    Cigna Has ERISA Standing as a Fiduciary of the Plans at Issue..........................20

    B.    Cigna Properly Pleads an Equitable Claim Under ERISA § 502(a)(3). ................24

        (1)    Cigna Seeks to Recover Overpayments Made in Contravention of Plan Terms and to Enjoin HDL from Continuing its Improper Practices. ..........................................................................................24

        (2)    Cigna's ERISA Claim Seeks Equitable Relief. .......................................24

        (3)    The Basis of Cigna's ERISA Claim is Equitable......................................26

        (4)    Cigna Satisfies Any Applicable Tracing Requirements. ...........................28

    C.    Cigna's Attempt to Recover Overpayments from HDL Does Not Trigger ERISA's Notice and Appeal Requirements...........................................................29

**III.  CIGNA'S CLAIM FOR DECLARATORY JUDGMENT STANDS.** .......................32

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abrahams v. Young & Rubicam, Inc.*,
    240 Conn. 300 (1997) ........................................................................................... 11

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 (2004)............................................................................................... 9

*Aetna Health Inc. v. Health Goals Chiropractic Ctr.*, Inc.,
    10-cv-5216, 2011 WL 1343047 (D.N.J. Apr. 7, 2011)......................................... 10

*Aetna Life Ins. Co. v. Bay Area Surgical Mgmt., LLC*,
    No. C–12–05829 RMW, 2013 WL 685375 (N.D. Cal. Feb. 25, 2013)................. 29

*Aetna Life Ins. Co. v. v. Cleveland Imaging & Surgical Hosp., LLC*, No. 4:12-cv-02451, Dkt.
    161 at *5 (S.D. TX August 20, 2014) ................................................................... 29

*Aiu Ins. Co. v. Olmecs Med. Supply, Inc.*,
    No. CV-042934ERK, 2005 WL 3710370 (E.D.N.Y. Feb. 22, 2005)..................... 15

*Arapahoe Surgery Ctr. LLC v. Cigna Healthcare, Inc.*,
    No. 13-cv-3422-WJM-CBS,
    2015 WL 1041515 (D. Colo. Mar. 6, 2015) ........................................................ 10

*Ayotte Bros. Const. Co. v. Finney*,
    42 Conn. App. 578 (1996) .................................................................................... 11

*Banning v. Right Choice Real Estate, LLC*,
    No. CV106003818S, 2011 WL 1033223 (Conn. Super. Ct. Feb. 22, 2011) ......... 12

*Basso Sec. Ltd. v. Interstate Bakeries Corp.*,
    No. CIV. 3:01CV575 (PCD),
    2002 WL 32255352 (D. Conn. Jan. 18, 2002)...................................................... 15

*Biomed Pharm., Inc. v. Oxford Health Plans (N.Y.), Inc.*,
    522 F. App'x 81 (2d Cir. 2013) ............................................................................. 6

*Bolduan v. Life Insurance Co. of North America*,
    No. 12-CV-1003, 2012 WL 6553807 (E.D. Wis. Dec. 14, 2012) ......................... 31

*Burnham v. Karl & Gelb, P.C.*,
    50 Conn. App. 385 (1998)
    *aff'd*, 252 Conn. 153 (2000)........................................................................... 12, 19

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*Central States, Southeast & Southwest Areas Health & Welfare*
    *Fund v. Gerber Life Insurance Co.*,
    771 F.3d 150 (2d Cir. 2014) .................................................................. 27

*Cherene v. First American Financial Corp. Long-Term Disability Plan*,
    303 F. Supp. 2d 1030 (N.D. Cal. 2004) ................................................ 31

*Chevron U.S.A. Inc. v. Echazabal*,
    536 U.S. 73 (2002) ................................................................................ 27

*Coan v. Kaufman*,
    457 F.3d 250 (2d Cir. 2006) .................................................................. 28

*Conemaugh Star Plan Welfare Benefit Plan & Trust v. Fisher*,
    536 F. Supp. 2d 231 (D. Conn. 2008) .................................................. 22

*Conn. Gen. Life Ins. Co. v. Adv. Chiropractic Healthcare*,
    — F. Supp. 3d —, 2014 WL 5100572 (E.D.N.Y. Oct. 10, 2014) .................. 10, 11

*Conn. Gen. Life Ins. Co. v. Houston Scheduling Servs., Inc.*, No. 3:12–cv–01456 (MPS) (D.
    Conn. July 16, 2013) ............................................................................ 29

*Conn. Gen. Life Ins. Co. v. La Peer Surgery Ctr.*,
    No. 2:13-cv-03726-RGK-JCG (C.D. Cal. July 23, 2014) ...................... 30

*Conn. Gen. Life Ins. Co. v. Roseland Ambulatory Ctr. LLC*,
    No. 2:12-CV-05941 DMC, 2013 WL 5354216 (D.N.J. Sept. 24, 2013) ................ 30

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991) .................................................................... 32

*D.B. Healthcare, LLC v. Blue Cross Blue Shield of Ariz.*,
    No. 2-13-cv-01558-NVW,
    2014 WL 3349920 (D. Ariz. July 9, 2014) .......................................... 31

*DaPonte v. Manfredi Motors, Inc.*,
    157 F. App'x 328 (2d Cir. 2005) .......................................................... 10

*DDR Construction Services, Inc. v. Siemens Industries, Inc.*,
    770 F. Supp. 2d 627 (S.D.N.Y. 2011) .................................................. 12

*DiPietro-Kay Corp. v. Interactive Benefits Corp.*,
    825 F. Supp. 459 (D. Conn. 1993) ....................................................... 10

*Duksa v. City of Middletown*,
    173 Conn. 124 (1977) ........................................................................... 11

iii

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Enercomp, Inc. v. McCorhill Pub., Inc.*,
  873 F.2d 536 (2d Cir. 1989) ......................................................................... 23

*Fehn v. Grp. Long Term Disability Plan for Employees of JP Morgan Chase Bank*,
  No. 07 CIV. 8321 (WCC), 2008 WL 2754069 (S.D.N.Y. June 30, 2008) ........................... 29

*Frommert v. Conkright*,
  433 F.3d 254 (2d Cir. 2006) .................................................................... 20, 21

*Fustok v. UnitedHealth Group, Inc.*,
  2013 WL 2189874 (S.D. Tex. May 20, 2013) ...................................................... 10

*Garwood & Sons Const. Co. v. Centos Assocs. Ltd. P'ship*,
  8 Conn. App. 185 (1986) ............................................................................. 19

*Geller v. Cnty. Line Auto Sales, Inc.*,
  86 F.3d 18 (2d Cir. 1996) ............................................................................ 9

*Great-West Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002) ............................................................................ 25, 26

*Gutta v. Standard Select Trust Ins. Plans*,
  530 F.3d 614 (7th Cir. 2008) ....................................................................... 23

*Horizon Blue Cross Blue Shield of N.J. v. E. Brunswick Surgery Ctr.*,
  623 F. Supp. 2d 568 (D.N.J. 2009) ................................................................. 11

*In re Mercator Software, Inc. Sec. Litig.*,
  161 F. Supp. 2d 143 (D. Conn. 2001) .............................................................. 16

*Kaminski v. Hayes*,
  No. 306CV1524CFD, 2009 WL 3193621 (D. Conn. Sept. 30, 2009) ................................ 32

*Kennedy v. Conn. Gen. Life Ins. Co.*,
  924 F.2d 698 (7th Cir. 1991) .......................................................... 6, 12, 13, 24

*Landmark Inv. Grp., LLC v. Calco Const. & Dev. Co.*,
  141 Conn. App. 40 (2013) ........................................................................... 11

*Marajh v. Broadspire Servs., Inc.*,
  No. 07-60975-CIV-ZLOCH,
  2008 WL 5063870 (S.D. Fla. Nov. 21, 2008) ...................................................... 30

*Mertens v. Hewitt Assocs.*,
  508 U.S. 248 (1993) .................................................................................. 20

**TABLE OF AUTHORITIES (CONT'D)**

Page(s)

*Neuberger v. Comm'r of Internal Revenue,*
    311 U.S. 83 (1940) ................................................................................................... 27

*Novak v. Kasaks,*
    216 F.3d 300 (2d Cir. 2000) ............................................................................. 16, 17

*Nutrishare, Inc. v. Conn. Gen. Life Ins. Co.,*
    No. 2:13-cv-02378-JAM-AC, 2014 WL 1028351 (E.D. Cal. Mar. 14, 2014) .......... 22, 23, 29

*Paneccasio v. Unisource Worldwide, Inc.,*
    No. CIVA3:01CV2065(CFD),
    2003 WL 1714085 (D. Conn. Mar. 28, 2003) ........................................................ 9

*Pearsall Holdings, LP v. Mountain High Funding, LLC,*
    No. 3:13CV437 JBA, 2014 WL 7270334  (D. Conn. Dec. 18, 2014) ................................... 14

*Pennsylvania Chiropractic Association v. Blue Cross Blue Shield Association*
    No. 09 C 5619, 2014 WL 1276585 (N.D. Ill. Mar. 28, 2014) ................................. 31

*Pennsylvania Chiropractic Association v. Blue Cross Blue Shield Association,*
    286 F.R.D. at 367 (N.D. Ill. Mar. 28, 2014) ........................................................ 31

*Phipps Houses Services, Inc. v. N.Y. Presbyterian Hospital,*
    No. 12 CIV. 3551 JPO, 2013 WL 1775388 (S.D.N.Y. Apr. 25, 2013) ................................. 22

*Pilot Life Ins. Co. v. Dedeaux,*
    481 U.S. 41 (1987) .................................................................................................... 9

*Porter v. Anthem Health Plans of Ky., Inc.,*
    No. 10-8-HRW, 2010 U.S. Dist. LEXIS 25791 (E.D. Ky. Mar. 18, 2010) ........................... 30

*Premier Health Ctr., P.C. v. UnitedHealth Group,*
    292 F.R.D. 204 (D.N.J. 2013) .............................................................................. 30

*Price v. Xerox Corp.,*
    445 F.3d 1054 (8th Cir. 2006) .............................................................................. 30

*RAB Associates, LLC v. Bertch Cabinet Manufacturing, Inc.,*
    No. NNHCV106015934S, 2012 WL 1434963 (Conn. Super. Ct. Mar. 29, 2012) ................ 18

*Rojas, et al. v. Cigna Health & Life Ins., et al.,*
    14-cv-6368(KMK) (S.D.N.Y. Sep. 15, 2014) ...................................................... 31

*Scelsa v. City University of New York,*
    76 F.3d 37 (2d Cir. 1996) ..................................................................................... 22

v

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*Schmitt vs Gen. Elec. Co.*,
No. CIV. 3:06CV726PCD, 2007 WL 1245312 (D. Conn. Apr. 25, 2007) ............................ 32

*Sereboff v. Mid Atl. Med. Servs., Inc.*,
547 U.S. 356 (2006) ................................................................................................ passim

*Solomon v. Aberman*,
196 Conn. 359, 493 A.2d 193 (1985) ................................................................................. 18

*State v. Acordia, Inc.*,
310 Conn. 1 (2013) ................................................................................................ 11

*Stevenson v. Bank of N.Y. Co.*,
609 F.3d 56 (2d Cir. 2010) ................................................................................................ 9

*Thurber v. Aetna Life Ins. Co.*,
712 F.3d 654 (2d Cir. 2013),
*cert. denied*, 134 S. Ct. 2723, 189 L. Ed. 2d 778 (2014) ............................................... passim

*Titan Sports, Inc. v. Turner Broad. Sys., Inc.*,
981 F. Supp. 65 (D. Conn. 1997) ................................................................................... 20

*Trustees of The Teamsters Local Union No. 443 Health Servs. & Ins. Plan v. Papero*,
485 F. Supp. 2d 67 (D. Conn. 2007) ................................................................................ 21

*US Airways, Inc. v. McCutchen*,
133 S.Ct. 1537 (2013) ........................................................................................... 27, 28

*Vacca v. Trinitas Hospital*,
No. 05-CV-0368 JFB AKT,
|2006 WL 3314637 (E.D.N.Y. Nov. 14, 2006) .......................................................... 28, 29

*Weitzenkamp v. Unum Life Ins. Co. of Am.*,
661 F.3d 323 (7th Cir. 2011) ...................................................................................... 23

**Statutes and Regulations**

29 C.F.R. § 2560.503-1 ................................................................................................. 30

29 U.S.C. § 1002(21)(A) ................................................................................................ 20

Conn. Gen. Stat. Ann. § 42-110g(a) .............................................................................. 11

ERISA § 502(a)(3) ............................................................................................ passim

**Rules**

Fed. R. Civ. P. 15 .......................................................................................................... 38

## PRELIMINARY STATEMENT

This case involves HDL's[1] fraudulent practices designed to bill exorbitant, "phantom" charges to healthcare benefit plans so that HDL can reap an improper windfall at the expense of Cigna and the plans it services.  Specifically, HDL lures patients covered by Cigna-administered plans to use HDL's out-of-network services by promising these patients that it will not bill them ***anything***, even though—as HDL knows—the patients have cost-sharing obligations under their respective plans.  HDL then submits inflated charges to Cigna for the services under the false pretense that these charges are actually being billed to the patients.  Unaware of HDL's scheme, Cigna pays HDL for a portion of HDL's phantom charges based on the assumption that the patients would pay the balance, as required under the terms of their plans.  These payments were significant: based on HDL's misrepresentations about its charges, Cigna and the members' plans paid HDL approximately $84 million.

HDL's misconduct gives rise to numerous causes of action.  By billing Cigna and the plans it administers at grossly inflated rates that misrepresented what HDL intended to collect from its patients—which was, in fact, nothing—HDL unjustly enriched itself at the expense of Cigna and the plans it administers (Count I).  HDL's scheme of falsely billing Cigna for charges that HDL never intended to bill its patients also constitutes fraud (Count II), or, at a minimum, negligent misrepresentation (Count III).  And by telling members of Cigna-administered plans that they did not have to pay anything for HDL's services—including the cost-sharing obligations that HDL knew that these members owed under their plans—HDL tortiously interfered with Cigna's contracts with its members (Count IV).  Separately, HDL tortiously interfered with Cigna's contracts with providers that participate in Cigna's network by

---

[1] "HDL" refers to Defendant Health Diagnostic Laboratory, Inc., and "Cigna" refers to Plaintiffs Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company.

knowingly inducing them to refer Cigna patients to HDL despite the provision in the providers' contracts prohibiting referrals to out-of-network providers like HDL.   These practices also constitute unfair and deceptive business practices under Connecticut's Unfair Trade Practices Act (CUTPA) and Unfair Insurance Practices Act (CUIPA) (Count V).   Because the ERISA plans that Cigna administered do not cover charges that its members were not obligated to pay, Cigna, in its capacity as a plan fiduciary, is equitably entitled to recoup the overpayments that HDL induced Cigna to make on behalf of these plans, as well as to obtain relief enjoining HDL from continuing its fee-forgiving scheme (Count VI).   Finally, Cigna seeks declaratory judgment that HDL is not entitled to collect on its false claims, among other things (Count VII).

Faced with these well-pled claims, HDL offers a series of misguided arguments in moving to dismiss, none of which has merit.   HDL's argument that Cigna's state-law claims are preempted fails because these claims are based on HDL's independent statutory and common-law duties—apart from the terms of the patients' plans—not to misrepresent its charges to Cigna when seeking payment, or improperly interfere with Cigna's respective contracts with its members and network providers.   Relatedly, HDL's suggestion that Cigna does not allege HDL owed it any duties ignores the allegations that HDL had a common-law duty to submit honest and accurate claims when seeking payment from Cigna, regardless of the terms of HDL's patients' plans, and its breach of that basic duty caused significant harm.   HDL's attack on the sufficiency of  Cigna's fraud claims also falls flat, as the Complaint describes HDL's fraudulent fee-forgiving scheme in particularized detail, and includes a spreadsheet with hundreds of thousands of claims, as well as the corresponding dates of submission, amounts HDL falsely charged, and amounts that Cigna paid.   HDL's assorted attacks on Cigna's other state-law claims

similarly ignore the substance of Cigna's Complaint, which details how HDL's improper conduct serves as the basis for each claim and the resulting damages.

HDL's challenge to Cigna's ERISA claim fares no better.  While HDL argues that Cigna lacks standing to sue on behalf of its fully-funded plans, ERISA and the supporting case law show that Cigna is a fiduciary of these plans just as it is of self-funded plans, and therefore may seek relief on behalf of all of these plans.  And the types of relief that Cigna seeks—recoupment of the amounts that the plans overpaid HDL and an injunction against future misconduct—are the types of equitable relief that ERISA § 502(a)(3) has traditionally allowed.  Indeed, recent Second Circuit precedent confirms that § 502(a)(3) permits an insurer to seek restoration of funds pursuant to overpayment provisions in the plan, as Cigna seeks to do here.  *See Thurber v. Aetna Life Ins. Co.*, 712 F.3d 654, 663 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2723, 189 L. Ed. 2d 778 (2014).  Finally, court after court in this District and others have rejected HDL's attempt to characterize Cigna's overpayment action as an adverse benefit determination.

HDL's motion to dismiss should therefore be denied in its entirety.

## **BACKGROUND**

This case arises out of a scheme by which HDL improperly induced Cigna and the healthcare benefit plans it administers to pay approximately $84 million to HDL.  Cigna brought this suit to remedy that harm.

### **1.      Cigna's Administration of Healthcare Plans.**

Cigna is a managed care company that provides administrative services to employee health plans, including all the plans identified on Exhibit A.  (Compl. ¶ 2; Ex. A.)[2]  For both

---

[2]     Citations to "Compl. ¶" refer to paragraphs in Plaintiffs' Amended Complaint (the "Complaint"), Dkt. 40, filed on January 16. 2015.  "Ex." refers to the exhibits identified by letter attached to the Amended Complaint, Dkts. 40-1 through 40-6.  Because Exhibit A is a Microsoft Access database file that was too large for the electronic filing system, Cigna filed a Notice of Manual Filing, Dkt. 44, which was entered on the docket on January 20, 2015, and sent the Court a CD containing a redacted version of the exhibit.  Cigna served HDL with an

plans that Cigna insures ("fully-funded" plans), and those funded by the sponsoring employers (Administrative Services Only, or "ASO" plans), Cigna exercises discretionary authority to: (1) interpret and apply plan terms, including by making any necessary factual determinations; (2) determine enrollment and benefit eligibility, including by computing benefit payment amounts; (3) fully and fairly review any claim denial which a claimant appeals; and (4) take actions necessary to recover overpayments made by the plans, on the plans' behalves. (Compl. ¶¶ 2, 23, 53; Ex. B at 41.)[3]

### 2. Cost-Sharing Obligations Which Keep Healthcare Affordable for Cigna-Administered Plans and Their Members.

One way Cigna exercises its discretionary authority is by controlling costs to the plan. (Compl. ¶ 2.) To that end, Cigna ensures that members of the plans it administers satisfy their applicable cost-sharing obligations, which are the portions of medical service charges that participants are required to pay (such as co-insurance, co-payments, and deductibles). (*Id.* ¶¶ 30-33.) Cigna also contracts with providers, who thereby become "in-network" providers and agree to charge fixed rates for their services to members of Cigna-administered plans in exchange for access to these participants as patients. (*Id.* ¶¶ 33-34.) In-network providers also agree not to bill plan members for any difference between the plan's reimbursement to the provider and the provider's billed charges. (*Id.* ¶ 35.) Plan participants may also receive services from providers, such as HDL, who have not contracted with Cigna ("out-of-network" providers), but such out-of-

---

unredacted version of Exhibit A. For the convenience of the Court, where docket entries from other cases are not available on Westlaw, Cigna has attached those documents as numbered exhibits to the Declaration of John C. Pitblado, submitted concurrently herewith. Those documents are cited as "Ex. _ to Pitblado Decl." Citations to "Def. Br." refer to Defendant's March 2, 2015 Memorandum of Law in Support of Motion to Dismiss Cigna's Amended Complaint, Dkt. 53. Unless otherwise indicated, internal quotations and citations are omitted and emphasis is added.

[3] Because the internal pagination of some of the exhibits to the Complaint does not begin on the first page of the document, page references herein are to the page numbers across the top margin of the exhibit. Page 25 thus refers to "Page 25 of 67" printed across the top of the exhibit alongside the docket and filing information.

network providers are free to charge whatever they want for services, and out-of-network services are generally more expensive than in-network services. (*Id.* ¶ 36.) In turn, members' cost-sharing obligations are usually much higher for out-of-network services. (*Id*. ¶ 38.) This ensures that a member fully appreciates the choice between visiting an in-network provider, or paying an increased share of the additional cost for out-of-network services out of his or her pocket. (*Id.* ¶¶ 37-40.) Moreover, members are required to pay the difference between the out-of-network provider's charge and the amount that Cigna allows for a particular claim. (*Id.* ¶ 44.)

To effectuate this important cost control function and maintain the affordability of healthcare for the plans and plan members, Cigna-administered plans do not cover charges that the member is not obligated to pay. (*Id.* ¶ 42; Ex. D at 38-39.) The plans also limit reimbursement to the "Maximum Reimbursable Charge," which cannot exceed the healthcare provider's normal charge for the service. (Compl. ¶ 44.) Finally, the plans do not reimburse members for every charge that the provider submits to Cigna, but rather only for a portion of "Covered Expenses," which are only those "expenses incurred" by the member, and are subject to cost-sharing obligations. (*Id*. ¶ 46.) Members are thus not entitled to reimbursement of charges for which they have not satisfied their cost-sharing obligations. (*Id.*)

When a provider submits a reimbursement claim to Cigna, there is no way for Cigna to know whether the provider is actually billing the member the same amount, or whether the provider is collecting the member's cost-sharing obligations. (*Id.* at ¶ 60.) Instead, Cigna must rely on the charges submitted by the provider, which has a duty to submit accurate claims. (*Id.* ¶¶ 60, 105.)

In recent years, certain providers have created a scheme to attract health plan members by promising not to bill patients for their cost-sharing obligations, while at the same time billing

5

health plans as if they had.  (*Id.* ¶¶ 58-61.)  Courts, as well as state and federal agencies, have found that these schemes are unlawful, *see e.g.*, *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 702 (7th Cir. 1991) ("If [a provider] wishes to receive payment under a plan that requires co-payments, then he must collect those co-payments."); *Biomed Pharm., Inc. v. Oxford Health Plans (N.Y.), Inc.*, 522 F. App'x 81, 82 (2d Cir. 2013) (upholding dismissal of provider's claim and noting "beneficiary's failure to fulfill the deductible and coinsurance obligations"), and states have enacted statutes specifically banning fee-forgiving in order to protect health plans and their members from this deceptive practice.  (*Id.* ¶¶ 58, 61, 64.)

### 3. HDL's Fee-Forgiving Scheme.

HDL is a provider of routine laboratory services.  (*Id.* ¶ 4.)  HDL does not participate in Cigna's provider network, and therefore provides services to members of the plans that Cigna administers and/or insures on an out-of-network basis.  (*Id.*)  Normally, members would have to pay more for HDL's services than they would if they saw a provider that participated in Cigna's network based on the cost-sharing requirements described above, but HDL implemented a fee-forgiving scheme so that this did not happen.  (*Id.*)

HDL's scheme starts by tricking plan members into believing that they are not required to pay anything for HDL's services, thus enticing members with the promise of services at little or no cost, and increasing HDL's patient volume.  (*Id.* ¶¶ 8, 55, 56.)  HDL accomplishes this deception with the help of marketing materials that promise patients that their "out-of-pocket cost [will be] ZERO" for HDL's services, and that HDL "takes all the risk if [Cigna] does not pay for" the services.  (*Id.* ¶ 51; Ex. E.)  In addition, HDL specifically instructs its patients not to pay the cost-sharing obligations required by their plans.  (Compl. ¶¶ 8, 55.)  This strategy is effective, and HDL has attracted tens of thousands of members in Cigna-administered plans. (Ex. A.)

Although HDL does not charge its patients anything for its services, it charges the patients' plans as if it did.  (*Id.* ¶ 48.)  Take a simplified example where HDL bills Cigna $10,000 for its services, and Cigna allows the entire amount, none of which is subject to a deductible.  If that patient's co-insurance was 40% for out-of-network services such as HDL's, Cigna would pay $6,000 to HDL (60% of the allowed amount) and expect the member to pay his or her $4,000 in co-insurance.  (*Id.* ¶ 56.)  But despite having billed Cigna for $10,000, HDL promises not to collect the member's $4,000 cost-sharing obligation and accept whatever amount Cigna pays as payment in full.  (*Id.*)  HDL's $10,000 charge to Cigna is thus not its actual charge, and Cigna has paid HDL approximately $84 million in reliance on those misrepresentations.  (*Id.* ¶¶ 1, 60, 102.)  In order to further drive patient volume, HDL also pays fees to other providers to refer their patients to HDL, inducing these providers to breach their in-network contracts with Cigna, and HDL encourages them to order a litany of tests regardless of their medical necessity.  (*Id.* ¶¶ 66-67.)

4.  **Cigna's Investigation of HDL.**

HDL never disclosed the nature and extent of its scheme, and instead told Cigna it did not engage in fee-forgiving.  (*Id.* ¶¶ 70, 95.)  On April 12, 2011, HDL's then-CEO Tonya Mallory sent a letter falsely "assur[ing] Cigna that HDL [would] not engage in a general practice of accepting as payment in full the payments made by Cigna where deductible or copayments apply," and "that all claim forms and bills submitted to Cigna by HDL will indicate the actual charge for service(s) provided."  (*Id.* ¶¶ 95-96.)

As part of its discretionary authority to administer the plans, Cigna undertook its own internal investigation into HDL's billing practices, and only then uncovered the full nature and extent of HDL's fee-forgiving scheme.  (*Id.* ¶¶ 70-71.)  This investigation identified the marketing materials in which HDL promised to waive patients' cost-sharing responsibilities, and

in February 2013, Cigna's Special Investigations Unit began sending questionnaires to members who had received HDL's services.  (*Id.* ¶¶ 72-73.)  At least 27 members responded, and despite the fact that all of them owed hundreds of dollars or more in cost-sharing responsibilities, HDL did not bill them ***anything***.  (*Id.* ¶¶ 74-76.)

In one example, HDL submitted a claim to Cigna stating a charge of $1,484 (more than double Medicare rates), for which the member's cost-sharing responsibility would have been $707.52, but HDL did not charge the member anything.  (*Id.* ¶ 81-83.)  Based on HDL's claim for reimbursement, Cigna paid HDL $461.28.  (*Id.* ¶ 83.)  In another example, HDL submitted a claim to Cigna stating a $2,979 charge, but did not collect the patient's $649.40 cost-sharing responsibility.  (*Id.* ¶¶ 87-88.)  Based on HDL's representation, Cigna paid HDL $1,742.20.  (*Id.* ¶ 90.)

As a result of HDL's scheme, Cigna has paid HDL more than $84 million.  (*Id.* ¶ 92.)  Cigna deposited the funds into HDL's accounts at a bank in Richmond, Virginia.  (*Id.* ¶ 93.)  Although Cigna has begun reducing or denying benefits for claims from HDL, HDL continues to engage in this scheme.  (*Id.* ¶¶ 9, 94.)

## ARGUMENT

### I.    CIGNA'S STATE LAW CLAIMS ARE PROPERLY PLED.

#### A.    Cigna's State Law Claims Are Not Preempted By ERISA.

HDL contends that Cigna's state-law claims on behalf of ERISA plans are preempted because they are based on HDL's "fail[ure] to collect payments that were purportedly required by . . . ERISA plans."  (Def. Br. at 25.)  As an initial matter, HDL does not contend that ERISA preempts any of the state-law claims involving patients who were not covered under plans governed by ERISA; therefore, at a minimum, Counts I through V must survive as they relate to claims covered by such patients' non-ERISA plans.

Moreover, to find ERISA preemption, it is not enough that the claim is merely connected to, or references, an ERISA plan. *See Geller v. Cnty. Line Auto Sales, Inc.*, 86 F.3d 18, 22 (2d Cir. 1996) (reversing district court's finding that "common law fraud claim was preempted by ERISA on the ground that it . . . ha[d] a connection with or reference to an employee benefit plan."). Instead, under the test set forth by the U.S. Supreme Court in *Aetna Health Inc. v. Davila*, ERISA only preempts state law claims "where there is no other independent legal duty that is implicated by a defendant's actions." 542 U.S. 200, 210 (2004).

The Complaint clearly alleges that HDL was subject to legal duties independent of ERISA. Cigna's state-law claims allege that HDL improperly submitted phantom charges to Cigna in a scheme to receive exorbitant reimbursement from Cigna. (Compl. ¶ 4 ("The rates HDL submits to Cigna are fictional rates that misrepresent what HDL actually intended to collect.").) These allegations implicate HDL's legal duties—independent of anything in HDL's patients' ERISA plans—not to fraudulently or negligently misrepresent its charges, tortiously interfere with Cigna's contracts, unjustly enrich itself at Cigna's expense, or engage in unfair practices prohibited by Connecticut statutes. (*Id.* at Counts I-V.) Moreover, the focal point of these claims is HDL's fraudulent misrepresentations, not the terms of an ERISA plan. (*Id.*)[4]

Accordingly, courts in this Circuit have routinely held that state-law claims such as Cigna's here are not preempted by ERISA. *See, e.g.*, *Stevenson v. Bank of N.Y. Co.*, 609 F.3d 56, 62 (2d Cir. 2010) (holding that unjust enrichment, negligent misrepresentation, fraud, and tortious interference with contract claims were not preempted by ERISA); *DaPonte v. Manfredi*

---

[4]   This case is thus nothing like the cases HDL cites on page 25 of its brief, where the state law claims at issue were based entirely on legal duties arising from the plans. *See Paneccasio v. Unisource Worldwide, Inc.*, No. CIVA3:01CV2065(CFD), 2003 WL 1714085, at *7 (D. Conn. Mar. 28, 2003) ("[R]epresentations deal[t] expressly and exclusively with the benefits under the ERISA plan."); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 43 (1987) (state law claims were based on "failure to provide benefits under the insurance policy").

*Motors, Inc.*, 157 F. App'x 328, 331 (2d Cir. 2005) ("ERISA plan may provide contextual background for a garden variety fraud without triggering preemption where . . . [the] fraud claim does not rely on the [ERISA] plan's operation or management."); *Conn. Gen. Life Ins. Co. v. Adv. Chiropractic Healthcare*, — F. Supp. 3d —, 2014 WL 5100572, at \*4-6 (E.D.N.Y. Oct. 10, 2014) (acknowledging "the trend towards a narrowing application of preemption" and declining to find ERISA preemption of insurer's fraud and unjust enrichment claims "that [providers] . . . defrauded the Plaintiff insurance company by billing and getting paid for medical services that were fraudulently provided"); *DiPietro-Kay Corp. v. Interactive Benefits Corp.*, 825 F. Supp. 459, 462 (D. Conn. 1993) (holding that CUTPA and CUIPA claims were not preempted by ERISA).[5]

Moreover, courts have specifically held that state-law claims against fee-forgiving providers are not preempted by ERISA. *See, e.g.*, *Arapahoe Surgery Ctr. LLC v. Cigna Healthcare, Inc.*, No. 13-cv-3422-WJM-CBS, 2015 WL 1041515, at \*7 (D. Colo. Mar. 6, 2015) ("The Court finds that Cigna's state law claims are not preempted by ERISA because the claims at issue are based on whether the ASCs made material misrepresentations, and whether those alleged misrepresentations caused the ASCs to be unjustly enriched or caused interference with the plans."); *Aetna Health Inc. v. Health Goals Chiropractic Ctr.*, Inc., 10-cv-5216, 2011 WL 1343047, at \*4 (D.N.J. Apr. 7, 2011) (insurer's state-law claims against fee-forgiving provider were not "a mere billing dispute involving overpayment of benefits, and, therefore, governed by ERISA" because the provider's "conduct, not the terms of the ERISA plans, is the focal point

---

[5]   *See also*, *Fustok v. UnitedHealth Group, Inc.*, 2013 WL 2189874, at \*5-6 (S.D. Tex. May 20, 2013) (finding no ERISA preemption of insurer's fraud counterclaim against a provider who submitted false insurance claims, and explaining that "United's fraud counterclaim does not rest on disputed interpretation of the scope of coverage under the health plans," that "[w]hether [the provider's] billing practices are tortious does not require interpretation of the Plan," and collecting other decisions that "have found no ERISA preemption in similar cases").

of . . . claims."); *Horizon Blue Cross Blue Shield of N.J. v. E. Brunswick Surgery Ctr.*, 623 F. Supp. 2d 568, 575 (D.N.J. 2009) (ERISA did not preempt fraud, negligent misrepresentation, and tortious interference claims against fee-forgiving provider).

> **B.** **HDL's Deceptive Billing Breached Its Common-Law Duties and Harmed Cigna and the Plans.**

Cigna alleges that (1) HDL had a common-law duty to submit accurate claims for reimbursement, and (2) Cigna and the plans have been harmed as a result of HDL's deceptive practices. HDL's contention that Cigna has not adequately pled a duty or harm therefore has no merit.

> (1)     HDL Has a Common-Law Duty to Honestly Bill Cigna.

"[T]here is an independent duty, beyond any obligation under the Plans, that requires the Defendant medical service providers to submit honest and accurate claims to the Plaintiff insurer." *Advanced Chiropractic*, 2014 WL 5100572, at *7; *see also Duksa v. City of Middletown*, 173 Conn. 124, 127 (1977) ("A party who assumes to speak must make a full and fair disclosure as to the matters about which he assumes to speak."). As Cigna has alleged, HDL had this duty, which it repeatedly breached. (Compl. ¶ 105 (alleging that HDL had a duty "to submit honest and accurate claims").)[6]

---

[6]     HDL also overlooks its duty not to unjustly enrich itself at Cigna's expense, tortiously interfere with Cigna's contracts, or engage in deceptive or unfair practices in its dealings with Cigna under CUTPA and CUIPA, all of which Cigna lays out in its Complaint. *See Ayotte Bros. Const. Co. v. Finney*, 42 Conn. App. 578, 581 (1996) (defendants are unjustly enriched where they "were benefited, . . . unjustly did not pay the plaintiffs for the benefit, and . . . the failure of payment was to the plaintiffs' detriment."); *Landmark Inv. Grp., LLC v. Calco Const. & Dev. Co.*, 141 Conn. App. 40, 50-51 (2013) (defendant tortiously interferes with plaintiff's contract where he or she "intentionally [seeks] to interfere with [the contract] and, as a result, the plaintiff claim[s] to have suffered actual loss."); *Abrahams v. Young & Rubicam, Inc.*, 240 Conn. 300, 306 (1997) (CUTPA claim arises where plaintiff "suffers any ascertainable loss of money or property . . . as a result of the use or employment of a[n unfair or deceptive] method, act or practice . . . ." (citing Conn. Gen. Stat. Ann. § 42-110g(a))); *State v. Acordia, Inc.*, 310 Conn. 1, 19, 73 A.3d 711, 723 (2013) (CUIPA claim arises where defendant engages in "unfair or deceptive act or practice in the business of insurance").

Cigna's detailed allegations are thus a far cry from those in *DDR Construction Services, Inc. v. Siemens Industries, Inc.*, 770 F. Supp. 2d 627, 663 (S.D.N.Y. 2011), (*see* Def. Br. at 14), where the plaintiff merely

Moreover, Cigna cannot know what amount, if any, HDL actually bills patients for its services, so HDL knows that Cigna must rely on the charges HDL represents in its claim forms. (*See, e.g.*, Compl. ¶¶ 48, 60, 106-10, 116-20.)  HDL thus had an obligation to submit accurate charges for reimbursement.  *See, e.g.*, *Burnham v. Karl & Gelb, P.C.*, 50 Conn. App. 385, 390, 717 A.2d 811, 814 (1998) *aff'd*, 252 Conn. 153, 745 A.2d 178 (2000) ("suppl[ying] false information for the guidance of others in their business transactions" constitutes negligent misrepresentation); *Banning v. Right Choice Real Estate, LLC*, No. CV106003818S, 2011 WL 1033223, at *3 (Conn. Super. Ct. Feb. 22, 2011) (defendant commits fraud when false "statement was made to induce the other party to act on it"); *see also Kennedy*, 924 F.2d at 699 ("Insurers have trouble policing the rules, because they do not know how much (or even whether) the patient paid the provider directly.").  HDL's contention that Cigna has not adequately explained this duty has no merit.  (*See* Def. Br. at 14.)

(2)  Cigna Adequately Alleges Harm from HDL's Fee-Forgiving Scheme.

HDL's argument that the Complaint has not alleged that HDL's fee-forgiving scheme harmed Cigna or the plans it administers ignores at least three injuries outlined in the Complaint.

*First*, HDL's fraudulent billing practices caused Cigna and these plans to overpay for HDL's services.  Indeed, "HDL misrepresented its actual charges," and "[a]s a result, Cigna relied on the amount that HDL billed to Cigna," not the amount it actually charged, thus causing Cigna to "pay[] more for HDL's services than it is obligated to pay under the relevant plans." (Compl. ¶¶ 48, 60; Ex. A.)

---

alleged that "[b]y virtue of the relationship of trust and confidence between [the defendant] and [the plaintiff] which existed under the parties' arrangement, [the defendant] owed a duty of care to [the plaintiff] . . . [and t]he complaint sa[id] nothing else" about the purported duty.

***Second***, HDL's misrepresentations to Cigna's members harmed the plans by imposing additional costs that the plans would not have otherwise incurred.  By telling patients that they "DO NOT PAY the amount the insurance company says is the patient responsibility," HDL entices members with the misleading promise of services at little to no cost.  (*Id.* ¶¶ 8, 55.)  This deceptive strategy increases HDL's patient volume, resulting in greater consumption of HDL's exorbitantly-priced services by plan participants.  (*Id.* ¶¶ 8, 57; Ex. A.)  Because HDL does not charge members anything for its services, including the members' deductible and co-insurance obligations, the plans lose the benefits that "patient responsibility" provisions would normally provide to moderate demand for HDL's out-of-network services, and the costs that patients believe they have avoided are in fact passed on to the plans, driving up the cost of healthcare for the plans and their members.  (*Id.* ¶¶ 3, 57.)  *See Kennedy*, 924 F.2d at 701 ("Patients who pay nothing have no reason to moderate their demands for medical service, and providers may inflate the bill" accordingly.).

***Third***, HDL's practice of encouraging other providers to order tests regardless of medical necessity and paying referral fees to physicians similarly harms the plans by imposing additional costs, as well as damaging Cigna's relationships with its in-network providers.  (*Id.* ¶¶ 66-68.)

HDL posits that its misconduct did not harm Cigna or Cigna-administered plans because any amounts that HDL did not charge patients "would have gone to HDL, not to any plan or Cigna."  (Def. Br. at 14.)  But if not for HDL's deception, plan members would not have been tricked into receiving HDL's services in the first place, so Cigna and its plans would never have paid HDL's grossly inflated charges.  (Compl. ¶¶ 57, 66-67.)  Moreover, because HDL never intended to collect any portion of its charges from patients, HDL's charges to Cigna and its plans

were not HDL's actual charges, and thus Cigna and the plans should have never paid HDL's charges in the first place. (*Id.* ¶¶ 38, 42.)

HDL also suggests that, because the plans limit reimbursement to something less than HDL's billed charges, these phantom charges were irrelevant to what Cigna actually paid. (Def. Br. at 14-15.) But as the Complaint explains, Cigna relied on HDL's submitted charges as the starting point for how it determined reimbursement for HDL's claims.[7] (*Id.* ¶ 48.) As the Complaint further explains, Cigna's plans limit reimbursement for out-of-network services like HDL's to, at most, the provider's "normal" charge. (*Id.* ¶ 38.) Thus, it is critical to Cigna's claims determinations that out-of-network providers like HDL accurately report on claims submission forms the amounts that they actually obligate patients to pay, which is the only way that Cigna can determine a provider's normal charge. (*Id.* ¶¶ 4, 48.)[8]

### C. Cigna Adequately Alleges Fraud.

Under Federal Rule of Civil Procedure 9(b), "[t]he complaint must give the party adequate notice of the charges–it need not marshall all the evidence against him." *Pearsall Holdings, LP v. Mountain High Funding, LLC*, No. 3:13CV437 JBA, 2014 WL 7270334, at *7 (D. Conn. Dec. 18, 2014). Courts have construed Rule 9(b) to require a plaintiff to allege only "the who, what, when, where, and how: the first paragraph of any newspaper story." *Basso Sec.*

---

[7]   In an attempt to mislead the Court that Cigna did not rely on HDL's bills to determine payment amounts, HDL uses an example in which it charged Cigna $1,484 and Cigna allowed $1,168.80, of which the patient was responsible for $707.52 and Cigna paid HDL the remaining $461.28. (Def. Br. at 15; *see also* Compl. ¶¶ 36, 38; 81-85.) In reality, had Cigna known that HDL charged the patient nothing, as Cigna later learned was the case, it would not have paid HDL $461.68.

[8]   HDL further contends that damages cannot extend beyond February 2013, when it asserts Cigna "conducted its investigation . . . and began reducing or denying claims." (Def. Br. at 3.) But the Complaint alleges that Cigna's Special Investigations Unit began sending questionnaires at that time, not that it completed any investigation (Compl. ¶ 73), and the point at which Cigna had sufficient basis to conclude HDL was engaging in fraudulent billing or why Cigna may have continued to pay certain claims past even that point is not an appropriate issue to be decided on the pleadings.

*Ltd. v. Interstate Bakeries Corp.*, No. CIV. 3:01CV575 (PCD), 2002 WL 32255352, at *2 (D. Conn. Jan. 18, 2002).[9]

Cigna satisfied these five basic requirements with particularized allegations that (1) HDL, (2) induced Cigna to make overpayments, (3) by submitting claims on specific dates, (4) on claim forms submitted to Cigna, and (5) by misrepresenting its charges in its claim submissions. (*See, e.g.*, Compl. ¶¶ 1, 26, 81-93.)  In support of these allegations, Cigna attached an exhibit to its complaint laying out hundreds of thousands claims, including the amounts that HDL fraudulently charged, the dates it submitted those false charges to Cigna, and the amounts that Cigna paid in reliance on HDL's false submissions.  (Ex. A.)  This information is more than enough to notify HDL of the basis of Cigna's fraud allegations.  *See Aiu Ins. Co. v. Olmecs Med. Supply, Inc.*, No. CV-042934ERK, 2005 WL 3710370, at *1, 12 (E.D.N.Y. Feb. 22, 2005) (where insurer alleged providers knowingly submitted numerous reimbursement claims at inflated rates for medically unnecessary supplies, finding allegations satisfied Rule 9(b) where insurer "provide[d] a detailed chart," including the "claim number," the "prices charged," and the "dates of the submissions," because "when the [chart was] viewed in conjunction with the conduct described in the complaint . . . the specific fraud [was] evident.").

HDL mistakenly argues that Cigna has not alleged that HDL acted with fraudulent intent. (Def. Br. at 30.)  To plead fraudulent intent, a plaintiff need only "allege[] that defendants had knowledge of facts . . . contradicting their [ ] statements."  *In re Mercator Software, Inc. Sec.*

---

[9]    HDL argues that Cigna's other state-law claims must also satisfy Rule 9(b) merely because the Complaint refers to HDL's "fraudulent fee-forgiving scheme."  (Def. Br. at 29, 34-36.)  HDL is incorrect.  *See Indiaweekly.com, LLC v. Nehaflix.com, Inc.*, 596 F. Supp. 2d 497, 505-06 (D. Conn. 2009) (rejecting argument that tortious interference claim was subject to Rule 9(b)); *Traylor v. Awwa*, 899 F. Supp. 2d 216, 227 (D. Conn. 2012) (applying Rule 9(b) to fraud claim, but not CUTPA or CUIPA claims); *Flash Elec., Inc. v. Universal Music & Video Distrib. Corp.*, 312 F. Supp. 2d 379, 403 (E.D.N.Y. 2004) (in assessing tortious interference claim, noting the "liberal rules[ of] Fed.R.Civ.P. 8," and observing that plaintiffs need only plead "some specific facts which put defendants on notice as to which contracts they are accused of interfering with").

*Litig.*, 161 F. Supp. 2d 143, 149 (D. Conn. 2001).  Thus, in *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000), the Second Circuit found allegations of fraudulent intent sufficient where the "defendants knew at all relevant times that the Company had serious inventory problems," but refused to mark down the flawed inventory while at the same time publicly describing a policy to do so, thus "caus[ing] those filings to be materially misleading in that the disclosed policy no longer reflected actual practice."  Similarly here, HDL represented to Cigna that the charges on its claim forms were its actual charges even though it never intended to charge patients those amounts; in fact, HDL's entire business model depended on its promise not to bill these patients at all, as evidenced by its own marketing materials, while billing Cigna exorbitant rates for these patients' services.  (*See, e.g.*, Compl. ¶¶ 51-55; Ex. E (promising patients that their "'out-of-pocket' cost [would be] ZERO").)  By alleging that HDL "had knowledge of facts . . . contradicting" its representations to Cigna about its true charges, the Complaint sufficiently pleads facts showing HDL's requisite fraudulent intent.  *See Mercator Software*, 161 F. Supp. 2d at 149.[10]

HDL ignores these allegations and instead focuses on HDL's then-CEO Tonya Mallory's false assurance to Cigna that HDL did not engage in fee-forgiving, which HDL argues is insufficient to infer fraudulent intent.  (Def. Br. at 30.)  But contrary to HDL's assertion that the Complaint provides no "surrounding context" for Ms. Mallory's representations, the Complaint specifically alleges that Ms. Mallory sent her letter after Cigna questioned HDL about its billing

---

[10]   The Complaint also contains other allegations that provide circumstantial evidence of HDL's fraudulent intent. For instance, HDL "indicated that it [would] cease its fee-forgiving activities in Florida and Colorado," because those states have criminal statutes specifically banning HDL's fee-forgiving practices.  (Compl. ¶ 64.)  And responses that Cigna's members provided in questionnaires, including that one doctor who referred a member to HDL told the member not to pay HDL money because HDL's services were "part of a pilot/test," also strongly suggest HDL's fraudulent intent.  (*Id.* ¶ 79.)  *See also*, AMA Ethics Advisory Opinion 6.12 – Forgiveness or Waiver of Insurance Copayments (June 1993) (*cited in* Compl. ¶ 7) ("[P]hysicians should be aware that . . . [r]outine forgiveness of waiver or copayments may constitute fraud under state and federal law.") (available at: http://www.amaassn.org/ama/pub/physician-resources/medical-ethics/code-medical-ethics/opinion612.page).

practices; Ms. Mallory's "assur[ance] . . . that HDL will not engage in a general practice of accepting as payment in full the payments made by Cigna where deductible and copayments apply"—even though HDL continued to follow precisely that business model (Compl. ¶¶ 4, 6, 8, 48, 56, 81-90, 95-96)—is exactly the kind of "false reassurance[]" that the Second Circuit has found supports finding fraudulent intent. *Novak*, 216 F.3d at 311-12.[11]

And while HDL also contends that Cigna has not pled that HDL had "a motive or opportunity to commit fraud" (Def. Br. at 30), the Complaint explains in great detail HDL's employment of fraudulent billing practices to lure patients to use its out-of-network services, which these patients would not have otherwise used.  (Compl. ¶ 40.)  Similarly, the fact that HDL memorialized its fraudulent scheme in marketing materials to patients (Exs. E & F) shows that HDL did not isolate its practices to a handful of claims, but instead followed the type of "general practice" that HDL insists is required to show circumstantial evidence of HDL's fraudulent intent.  (Def. Br. at 31.)

### D.     Cigna's Other State Law Claims are Properly Pled.

Cigna also adequately alleges tortious interference with contract, negligent misrepresentation, unjust enrichment, and violations of CUTPA and CUIPA.

<u>Tortious Interference With Contract (Count IV)</u>.  To plead tortious interference with contract, a plaintiff must allege the "existence of a contractual . . . relationship and that the defendant(s), knowing of that relationship, intentionally sought to interfere with it; and, as a result, the plaintiff claimed to have suffered actual loss."  *Solomon v. Aberman*, 196 Conn. 359,

---

[11]   HDL's arguments that "Cigna fails to . . . [allege] that Mallory believed the statements to be false when she made them," and that Mallory's "forward-looking statements . . . are not even actionable for fraud" (Def. Br. at 31-32) are also contradicted by the facts alleged in the Complaint.  For instance, the exemplar marketing brochure promising patients that HDL will not charge them for its services is copyrighted in 2010 (Ex. E), one year before Ms. Mallory made her false statement, and HDL's patients confirmed that HDL continued its fraudulent billing scheme in 2012, one year after Ms. Mallory's letter.  (Compl. ¶¶ 74-76.)

364 (1985).  Here, HDL plainly knew about Cigna's contracts with HDL's patients—the plans

that Cigna administered for HDL's patients—as HDL relied on those contracts when seeking

payment for its services from Cigna while at the same time misleadingly telling patients that they

did not have to pay their cost-sharing obligations under their plans.  (Compl. ¶¶ 26, 51, 128-30.)

Cigna and the plans were harmed because plan members chose to receive HDL's services based

on these misrepresentations, imposing costs that Cigna and the plans would not otherwise have

incurred.  (*Id.* ¶¶ 3, 4, 133.)  The Complaint similarly makes clear that HDL knowingly

interfered with Cigna's contracts with in-network providers by paying them to refer patients to

HDL for non-emergency services, even though Cigna's contracts with these providers prohibit

referring patients out-of-network for such services; HDL's improper conduct caused a breach of

those in-network contracts and required Cigna and its plans to pay more than they should have

for services to plan members.  (*Id.* ¶¶ 67, 131-32.)

  HDL suggests that, because Cigna purportedly alleged that HDL became an "indirect

party to [Cigna's] contracts" with members, HDL should be immune from claims of tortious

interference.  (Def. Br. at 27.)  First, HDL mischaracterizes the Complaint's allegations.

Nowhere does Cigna allege that HDL is an "indirect party" to Cigna's contracts with members.

In any case, any assignment received by HDL for the reimbursement of its patients' claims does

not permit HDL to interfere with the other obligations in its patients' insurance contracts, such as

the cost-share amounts that patients are obligated to pay for HDL's services.[12]  Moreover, HDL's

---

[12] The only case that HDL cites in support of this argument is *RAB Associates, LLC v. Bertch Cabinet Manufacturing, Inc.*, No. NNHCV106015934S, 2012 WL 1434963 (Conn. Super. Ct. Mar. 29, 2012) (*see* Def. Br. at 27), did not deal with assignments.  Rather, in that case, the defendant and plaintiff entered into multiple contracts, and the plaintiff "was compensated based on a percentage of gross sales" of the defendant's products; given that direct contractual relationship, the court found that the plaintiff was precluded from pursuing a tortious interference claim based on the defendant's alleged interference with the plaintiff's potential relationships with buyers of the defendant's products.  *Id.* at * 7.

alleged interference occurred at the time that they solicited patients by promising to waive any charges to the patient, before any assignment could have been executed.  (*Id*. ¶¶ 50-51.)

Negligent Misrepresentation (Count III).  HDL fares no better in arguing for dismissal of Cigna's claim for negligent misrepresentation.  HDL does not deny that Cigna has alleged HDL "misleadingly bill[ed] Cigna and the plans at exorbitant and unjustified rates."  (*Id*. ¶ 4.)  In other words, HDL "suppl[ied] false information for the guidance of [Cigna] in [its] business transaction[s]" in order to induce Cigna to make overpayments.  *See Burnham v. Karl & Gelb, P.C.*, 50 Conn. App. 385, 390 (1998) *aff'd*, 252 Conn. 153 (2000).  Instead, HDL suggests Cigna has not alleged "that the charges submitted by HDL to Cigna were false" because statements about the value of HDL's services were "subjective" in the same way as a "bank's representation of itself as 'professional and stalwart.'"  (Def. Br. at 27-28.)  But unlike the subjective statements of professionalism or trustworthiness, HDL's "statement of value about [its] services" was a ***dollar amount on a bill to Cigna for those services***.  HDL's stated price is not a subjective statement.

Unjust Enrichment (Count I).  Cigna has properly pled that HDL has been unjustly enriched by its fee-forgiving scheme because "it is contrary to equity and good conscience for [HDL] to retain a benefit which has come to [it] at the expense of" Cigna and the plans.  *See Garwood & Sons Const. Co. v. Centos Assocs. Ltd. P'ship*, 8 Conn. App. 185, 187 (1986).  HDL's defense, that it was not unjustly enriched because it may have actually provided the services (Def. Br. at 28), misses the point.  HDL "misleadingly bills Cigna and the plans themselves at exorbitant and unjustified rates," which "misrepresent what HDL actually intended to collect."  (Compl. ¶ 4.)  The fact that HDL claims to have in fact rendered the services does

not remedy that it inappropriately billed for its services, which led it to collect payments to which it was not entitled.  (*See* Def. Br. at 28.)

CUTPA (Count V).  HDL's argument that Cigna has not pled a violation of CUTPA because Cigna purportedly did not allege that HDL used unfair or deceptive practices within Connecticut also fails. (Def. Br. at n.6.)  All that CUTPA requires is that HDL's deceptive practices be tied to commerce closely associated with Connecticut, *see Titan Sports, Inc. v. Turner Broad. Sys., Inc.*, 981 F. Supp. 65, 71 (D. Conn. 1997) ("A CUTPA violation . . . need not necessarily occur in Connecticut, but instead . . . must be tied to a form of trade or commerce intimately associated with Connecticut."), which Cigna satisfies by alleging that it is a Connecticut company that was injured by HDL's misconduct.  (*See, e.g.*, Compl. ¶¶ 13-14.) Moreover, the Complaint alleges that HDL has a business model designed to deceive its patients, and that HDL's practices include specifically targeting healthcare providers and patients in Connecticut.  (*See, e.g.*, *id.* ¶¶ 17, 19.)  Indeed, Exhibit A to the Complaint includes plans sponsored by Connecticut municipalities.  (*See* Ex. A.)

## II.   CIGNA'S ERISA CLAIM IS PROPERLY PLED.

### A.   Cigna Has ERISA Standing as a Fiduciary of the Plans at Issue.

ERISA authorizes a "fiduciary" to bring claims under section 502(a)(3).  *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 361 (2006) (noting that administrator may bring § 502(a)(3) claim to recover benefits paid by plan).  A fiduciary is anyone who "exercises ***any*** discretionary authority or discretionary control" with respect to (1) "management of such plan," (2) "management or disposition of its assets," or (3) "the administration of such plan."  29 U.S.C. § 1002(21)(A).   The Second Circuit has "recognized Congress's intention that ERISA's definition of fiduciary be broadly construed."  *Frommert v. Conkright*, 433 F.3d 254, 271 (2d Cir. 2006); *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) (noting that the

"functional" definition of a fiduciary "expand[s] the universe of" ERISA fiduciaries).  Whether a person or entity is an ERISA fiduciary is an issue of fact inappropriate for disposition on the pleadings.  *See Trustees of The Teamsters Local Union No. 443 Health Servs. & Ins. Plan v. Papero*, 485 F. Supp. 2d 67, 71 (D. Conn. 2007) (finding that whether a person is a fiduciary under ERISA "may not be determined on a motion to dismiss."); *see also Frommert*, 433 F.3d at 271 (holding that "whether a person is a fiduciary in a particular situation is a question of law and fact" and remanding the case).

The Complaint makes clear that Cigna is an ERISA fiduciary, both for its fully-insured plans and in its capacity as the claims administrator for self-funded plans.  Among other things, the plans give Cigna the "discretionary authority" to (1) "interpret and apply plan terms and to make factual determinations in connection with its review of claims"; (2) determine "whether a person is entitled to benefits under the plan, [including] computation of any and all benefit payments"; and (3) "perform a full and fair review, as required by ERISA, of each claim denial which has been appealed by the claimant or his duly authorized representative."  (Ex. B at 54.)  The plans at issue also grant Cigna the specific authority to take action to recover improper payments it has made on behalf of the plans—such as by bringing the instant litigation—by expressly providing that Cigna "will have the right at any time to . . . recover [any] overpayment from the person to whom or on whose behalf it was made."  (Ex. B at 42; *see also* Compl. ¶ 24 ("[A]ll of the plans at issue authorize Cigna to recover any overpayments made by the plans on the plans' behalves.").)

There can be no dispute that Cigna—whether as the administrator for its fully-insured plans or as the claims administrator for self-funded plans—has alleged it exercised such authority here by, among other things, (1) "making benefits determinations and paying benefit

claims," as well as "process[ing] claims and/or address[ing] appeals on behalf of all of the plans at issue," including those of HDL; (2) investigating HDL's billing practices, which revealed the extent of HDL's misconduct; and (3) denying payment on HDL's claims after it concluded that HDL's charges were fraudulent.  (*Id.* ¶¶ 9, 23-24, 70-71, 95; *see generally* Ex. A.)[13]

HDL does not suggest Cigna lacks standing to the extent that it claims relief on behalf of the ASO plans that it administers.  (Def. Br. at 6.)[14]  Instead, it contends that Cigna lacks standing as a fiduciary of its fully-insured plans because it "seeks to redress [only] alleged harm to itself."  But as HDL recognizes, a fiduciary may pursue recovery under § 502(a)(3) for the ERISA plan.  That is what Cigna seeks here.  Regardless of the source of funding, Cigna's ERISA claim seeks to recoup overpayments on behalf of the plans.  (Compl. ¶ 153 ("These overpayments belong in good conscience ***to the plans*** . . . ."); ¶ 157 ("Cigna seeks recovery of these overpayments ***on behalf of the plans*.").)[15]  Just as important, Cigna also seeks to enjoin

---

[13]   *Phipps Houses Services, Inc. v. N.Y. Presbyterian Hospital*, No. 12 CIV. 3551 JPO, 2013 WL 1775388, at *2 (S.D.N.Y. Apr. 25, 2013) thus lends no support to HDL's contention that Cigna does not bring this suit in its capacity as an ERISA fiduciary.  There, the plaintiff sought "reimbursement of [its own] expenses from Defendants related to the cost of providing benefits under the [ ] plan."  *Id.*  Here, Cigna's actions on behalf of the plans distinguish the present case from *Phipps*.

[14]   Contrary to HDL's contention otherwise (Def. Br. at n.1), Cigna has adequately alleged it is a fiduciary of each of the plans at issue by identifying the plan language that grants it fiduciary status and averring that it exercised its discretion for each of the claims at issue.  (Compl. ¶ 23; *Nutrishare, Inc. v. Conn. Gen. Life Ins. Co.*, No. 2:13-cv-02378-JAM-AC, 2014 WL 1028351, at *2-3 (E.D. Cal. Mar. 14, 2014) (where Cigna alleged that it "is the claims administrator for the ERISA plans at issue and has discretionary authority and control regarding claims made under the plan," finding that "[n]othing further in the way of proof [of its standing as a fiduciary] is necessary at this stage of the litigation").  Moreover, unlike the initial complaint at issue in *La Peer*, here Cigna included an exhibit identifying names of plan sponsors.

[15]   *Conemaugh Star Plan Welfare Benefit Plan & Trust v. Fisher*, 536 F. Supp. 2d 231, 236 (D. Conn. 2008) is inapposite.  There, the district court found that the plaintiff lacked standing as a fiduciary where (1) the "plaintiffs [had] not identified any areas in which the facts [were] disputed," (2) instead relied on allegations that were mere "conclusory statements that [the plaintiff was] a fiduciary," and (3) "at times fail[ed] to mention [the plaintiff] specifically at all."  *Id.* at 238.  Here, in contrast, Cigna describes in detail how it acted as a fiduciary, including with respect to HDL's claims.  (Compl. ¶¶ 23-24; Ex. A.)

Nor does *Scelsa v. City University of New York*, 76 F.3d 37, 40 (2d Cir. 1996) support HDL's contentions. (Def. Br. at 5.)  *Scelsa* did not involve ERISA or fiduciary status at all; the Second Circuit simply held that the district court lacked jurisdiction to enforce the terms of a settlement agreement where the "Dismissal Order neither expressly retains jurisdiction over the Agreement nor incorporates its terms."  *Id.* at 41.

HDL from improperly billing ERISA plans for its services because such bills are inconsistent with the terms of these plans.  (*Id.* ¶ 158.)  Such requests for relief fall squarely within the scope of Cigna's role as a fiduciary for its fully-insured plans and as a fiduciary in its capacity as the claims administrator for self-funded plans.  *See Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 616, 621 (7th Cir. 2008) (disability insurer allowed to assert equitable lien by agreement under § 502(a)(3) against participant whose benefits should have been offset against benefits received under other group insurance); *see also Weitzenkamp v. Unum Life Ins. Co. of Am.*, 661 F.3d 323, 332 (7th Cir. 2011) (same); *Nutrishare*, 2014 WL 1028351, at *2-3 (given Cigna's fiduciary status, it had "duty to enforce the terms of the ERISA plans and thus standing to bring the federal claims at issue").

HDL fares no better when trying to apply the plan's introductory statement that "[r]eferences to 'Cigna' . . . shall be deemed to mean your 'employer'" to the plan's later provision giving "Cigna" the authority to recover overpayments.  (Def. Br. at 8 (quoting Ex. B, at 6).)  The reference language that HDL quotes relates only to "***references to insurance***," because the employer, not Cigna, funds the plan.  (Ex. B at 6.)  It is not, as HDL misleadingly contends, a wholesale substitution for ***all*** references to "Cigna."  Indeed, under HDL's reading, any ASO plan would require the employer to determine medical appropriateness and enter into contracts with providers.  (*See, e.g.*, Ex. B at 25 (requiring "***Cigna*** [to] determine[ whether] the home is a medically appropriate setting"); *id.* at 30 (limiting in-network coverage for certain services to "participating facilities specifically contracted with ***Cigna***.").)  Such an absurd interpretation must fail.  *See Enercomp, Inc. v. McCorhill Pub., Inc.*, 873 F.2d 536, 549 (2d Cir. 1989) (applying principle that a "clause [should not] be interpreted in such a way as to make it absurd" to ERISA plans).

**B.      Cigna Properly Pleads an Equitable Claim Under ERISA § 502(a)(3).**

(1)      Cigna Seeks to Recover Overpayments Made in Contravention of Plan
Terms and to Enjoin HDL from Continuing its Improper Practices.

"A fiduciary may bring a civil action under § 502(a)(3) of ERISA '[ ] . . . to obtain other appropriate equitable relief . . . to enforce any provisions of this subchapter or the terms of the plan.'"   29 U.S.C. § 1132(a)(3); *Sereboff*, 547 U.S. at 361.   Here, the plans prohibit reimbursement of "charges for which [plan members] are not obligated to pay or for which [they] are not billed."   (Ex. B at 36.)   HDL, however, submitted charges without billing plan members for their required cost-sharing obligations under the plan.  (Compl. ¶ 4.)  Cigna thus seeks to recover payments that HDL induced Cigna to make on behalf of the plans, in contravention of the terms of the plans' requirements, and to enjoin HDL from continuing to submit charges that include amounts that HDL does not bill plan members, in violation of their ERISA plans.   As the Seventh Circuit found in *Kennedy*, 924 F.2d at 702, "[i]f [a provider] wishes to receive payment under a plan that requires co-payments, then he must collect those co-payments."

(2)      Cigna's ERISA Claim Seeks Equitable Relief.

HDL does not challenge Cigna's ability to seek an injunction directing HDL to cease its improper billing practices.   (Compl. ¶ 158.)   At a minimum, therefore, Cigna's ERISA § 502(a)(3) claim survives for this requested relief.  *See* 29 U.S.C. § 1132(a)(3) (fiduciary may "enjoin" any act which violates the terms of its plans and "enforce" the terms of its plans).

Cigna also adequately alleges that its ERISA claim for recovery of overpayments induced by HDL's fee-forgiving scheme is equitable in nature.   While HDL argues that this claim is really "an action for breach of contract . . . seeking monetary damages," (Def. Br. at 17), HDL mischaracterizes Cigna's allegations and is wrong as a matter of law.  Under ERISA § 502(a)(3),

24

relief is equitable in nature where the plaintiff seeks funds that in good conscience belong to the plans, and are "specifically identifiable" and "within the possession and control of the Defendant."  *Sereboff*, 547 U.S. at 362-63.   The allegations in the Complaint satisfy this standard.

The Complaint plainly alleges that the funds belong in good conscience to the plans, which made payments (based on HDL's misrepresentations) to which HDL was not entitled because it failed to collect the full amount of its charges, including the member's cost-sharing obligations.   (Compl. ¶¶ 42, 153.)   Moreover, the funds are specifically identified in the Complaint: the "overpayment[s]" which the plans at issue explicitly authorize Cigna to recover. (*See* Compl. ¶ 147 (Cigna "seeks to recover overpayments made by [the] plans to HDL"); Ex. B at 42; Ex. D at 45.)   And Cigna identifies numerous claims, including the amounts HDL billed and the amounts Cigna paid, in Exhibit A to the Complaint.   (*See* Ex. A.)   This is sufficient under Section 502.   *See Thurber*, 712 F.3d at 663 (holding claim was equitable under ERISA § 502 where the "insurer [sought] specific funds[, namely the] overpayments[,] . . . in a specific amount (the total overpayment . . . ) as authorized by the plan."), *cert. denied*, 134 S. Ct. 2723 (2014). Moreover, the funds here are within HDL's possession and control because, unlike in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 207-08 (2002), where the defendant's settlement with a third-party tortfeasor was allocated to a special needs trust, "the overpayments [here] were made ***directly by Cigna to HDL***."   (Compl. ¶ 152.)   Thus, Cigna's claim under Section 502 is one for equitable relief because it does not seek "to impose personal liability on the defendant, but to restore to [Cigna] particular funds or property in the defendant's possession."   *Thurber*, 712 F.3d at 662 (finding that counterclaim for recoupment of

25

overpayments made by Aetna to the plaintiff sought equitable relief) (citing *Great-West*, 534 U.S. at 214).

(3)    The Basis of Cigna's ERISA Claim is Equitable.

Under Section 502 of ERISA, the basis for a claim for recovery of overpayments is equitable where the terms of the plan create an equitable lien over such overpayments. *Sereboff*, 547 U.S. at 364. In *Sereboff*, the plan gave the insurer an equitable lien over the "portion of [any third party] recovery" corresponding to the benefits paid by the insurer. *Id.* Here, the plans at issue provide that "[w]hen an overpayment has been made by Cigna, Cigna will have the right at any time to: recover that overpayment from the person to whom . . . it was made." (Ex. B at 42.) HDL, in turn, accepted an assignment of the right to the member's reimbursement for the services that HDL provided, and as an assignee, HDL stood "in the shoes of the member[s]," and its right to receive that reimbursement was thus subject to this equitable lien. (Compl. ¶ 26; *see also id.* ¶ 154 (this "provision puts plan members—and HDL, as . . . their assignee—on notice that any overpayment made by Cigna will be recoverable (i.e., subject to a lien).").)

The Second Circuit has held that such provisions create an equitable lien where "the ERISA plan specifically identified a particular share of particular funds subject to return," such that the insurer was entitled to "collect for the medical bills it had paid." *Thurber*, 712 F.3d at 663. Thus, in *Thurber*, where the insurer sought "specific funds"—namely, "overpayments resulting from" the defendant's "simultaneous receipt of" benefits from other sources—"in a specific amount"—i.e., "the total overpayment"—the insurer had an equitable lien in the amount of the overpayment. *Id.* The plans at issue here similarly identify "specific funds" in the form of the overpayments that HDL's scheme induced Cigna to pay, and the "specific amounts" subject to an equitable lien: the amount of the overpayments. Cigna thus adequately pleads an equitable basis for its ERISA claim as well.

26

HDL's invocation of *Central States, Southeast & Southwest Areas Health & Welfare Fund v. Gerber Life Insurance Co.*, 771 F.3d 150, 151-52 (2d Cir. 2014) is of no moment. (Def. Br. at 20.)  In that case, the defendant had not received a valid assignment from the beneficiary under the plan insured by the plaintiff, but instead asserted an equitable lien over the defendant's funds based on the plaintiff's own separate agreement with the beneficiaries.  Here, as HDL concedes, the "***assignment*** . . . provides that . . .  HDL may receive the payment for [ ] services ***directly from Cigna***."  (Def. Br. at 23.)  And while HDL protests that an assignment to the right to payment does not subject HDL to all of the plan's provisions (Def. Br. at 23), it does subject HDL to the provisions that specifically deal with those same plan payments, including what happens when those payments were improper.

Finally, HDL incorrectly argues that, where a plan specifically refers to an equitable lien over tort recoveries, the court may not find that an independent overpayment provision also creates an equitable lien.  (Def. Br. at 21.)  But "[t]he maxim 'expressio unius est exclusio alterius' is an aid to construction not a rule of law."  *Neuberger v. Comm'r of Internal Revenue*, 311 U.S. 83, 88 (1940).  *See Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 81 (2002) ("The canon depends on identifying a series of two or more terms or things that should be understood to go hand in hand, which is abridged in circumstances supporting a sensible inference that the term left out must have been meant to be excluded.").  In *US Airways, Inc. v. McCutchen*, 133 S.Ct. 1537, 1543 (2013), for instance, the U.S. Supreme Court found that the plan could enforce an equitable lien based on a third-party recovery provision that did not specifically reference a lien.  *See id.* (quoting plan provision that beneficiary was "required to reimburse [US Airways] for amounts paid for claims out of any monies recovered from [any] third party.").  It did so even though another provision of the plan specifically predicated coverage on the existence of a lien

27

against any recovery from a third party.  *See* Ex. 1 to Pitblado Decl., Declaration of Kimi

Shanahan at 63, *US Airways, Inc. v. McCutchen, et al.*,  08-cv-01593 (W.D. Penn.), Dkt. 30-1,

30-2 (providing that services resulting from a third party tort were not covered unless the

member "provide[d the insurer] with a ***lien*** against [any] claim" the member had against the third

party).

(4)    Cigna Satisfies Any Applicable Tracing Requirements.

Cigna's allegations also satisfy the tracing requirements of Section 502 to the extent they

even apply.   "[N]o tracing requirement . . . applies to equitable liens by agreement or

assignment."  *Sereboff*, 547 U.S. at 365.  Here, Cigna has alleged that it has a lien against

overpayments made to HDL because patients assigned their right to payment to HDL.  (Compl.

¶ 154.)  Moreover, Cigna has specifically identified the assets in HDL's possession, including

the name and address of the bank where Cigna deposited the overpayments, as well as the

account and routing numbers.  (*Id.* ¶ 93.)  These allegations are more than enough.

HDL incorrectly posits that Cigna must allege that "HDL was required to segregate the

monies" at issue or "maintain[ ] Cigna's funds in a segregated account."  (Def. Br. at 24.)  In

fact, the Second Circuit held the opposite in *Thurber*, where it found that the "literal segregation

of funds is irrelevant when the terms of the ERISA plan," as here, create an equitable lien.  712

F.3d at 663-64.  The *Thurber* court accordingly rejected the dismissal theory that HDL pursues

here, namely that an allegation regarding a "particular fund . . . sought lacks sufficient specificity

by virtue of being an undifferentiated component of a larger fund."  *Id.* at 664.[16]

---

[16]   HDL's reliance on *Coan v. Kaufman*, 457 F.3d 250, 263 (2d Cir. 2006), in support of its claim that Cigna was
required to allege fund segregation, is misplaced, because the plaintiff there did not seek overpayments, let
alone pursuant to an equitable lien.  Instead, she brought a claim for breach of fiduciary duty, alleging that the
trustees of a 401(k) plan "mismanaged the funds and improperly failed to diversify its investments."  *Id.* at 253.

Nor do *Vacca v. Trinitas Hospital*, No. 05-CV-0368 JFB AKT, 2006 WL 3314637 (E.D.N.Y. Nov. 14, 2006),
or *Fehn v. Group Long Term Disability Plan for Employees of JP Morgan Chase Bank*, No. 07 CIV. 8321

28

### C.     Cigna's Attempt to Recover Overpayments from HDL Does Not Trigger ERISA's Notice and Appeal Requirements.

HDL's argument that Cigna denied HDL the requisite administrative processes before filing suit is based on the false premise that an action to recover overpayments is an adverse benefit determination ("ABD") under ERISA.  In fact, this Court has held just the opposite, finding that a "demand for reimbursement [from a provider] *is not an adverse benefit determination*," because "[n]othing in the [ERISA] regulations suggest that the notice or review requirements apply to a health plan's demand for reimbursement."  Ex. 2 to Pitblado Decl., Tr. of Hearing, Dkt. 86, at 47, 49, *Conn. Gen. Life Ins. Co. v. Houston Scheduling Servs., Inc.*, No. 3:12–cv–01456 (MPS) (D. Conn. July 16, 2013) .   Court after court outside this District has reached the same conclusion.  *See, e.g.*, Ex. 4 to Pitblado Decl., *Aetna Life Ins. Co. v. Cleveland Imaging & Surgical Hosp., LLC*, No. 4:12-cv-02451, Dkt. 161 at *5 (S.D. TX August 20, 2014) (holding that "[t]he Act is about beneficiaries recovering from plans – not the other way around"); *Nutrishare, Inc. v. Conn. Gen. Life Ins. Co.*, 2014 WL 2624981, at *3 (E.D. Cal. June 12, 2014) (ERISA notice and appeal requirements do not apply to the "specific equitable claims brought by CIGNA here, which are based on alleged false misrepresentations."); *Aetna Life Ins. Co. v. Bay Area Surgical Mgmt.*, *LLC*, No. C–12–05829 RMW, 2013 WL 685375, at *6 (N.D. Cal. Feb. 25, 2013) (insurer's claims against providers for fraudulently securing payments did "not involve any adverse benefits determination"); *Conn. Gen. Life Ins. Co. v. La Peer Surgery*

---

(WCC), 2008 WL 2754069 (S.D.N.Y. June 30, 2008) (*see* Def. Br. at 18) support HDL's theory.  Both decisions were based on an application of a fund segregation requirement that the Second Circuit rejected in *Thurber*.  *Compare Vacca*, 2006 WL 3314637, at *4 ("there is no indication or argument that the alleged overpayment in this case was retained separately from defendant's other funds") & *Fehn*, 2008 WL 2754069, at *4 ("JPMC does not identify segregated funds in plaintiff's possession"), *with Thurber*, 712 F.3d at 663 ("[L]iteral segregation of funds is irrelevant when the terms of the ERISA plan" create an equitable lien.).   In fact, the *Thurber* court expressly disagreed with the *Fehn* court's application of a strict segregation requirement. *See Thurber*,  712 F.3d at 665 n.3 ("To the extent that the district court in *Fehn* rested its decision on the insurer's inability to identify segregated funds in plaintiff's possession . . . we disagree.").

*Ctr.*, No. 2:13-cv-03726-RGK-JCG at *8 (C.D. Cal. July 23, 2014) (declining to require exhaustion of claims administrator's ERISA claim against provider because "more fundamentally, ERISA simply does not appear to provide for any administrative remedies for a fiduciary in Cigna's position to exhaust.").[17]

Courts have similarly found that ERISA's notice and appeal requirements apply only to initial benefit determinations and ***not***, as HDL contends, to subsequent efforts to recover overpayments.  *See Price v. Xerox Corp.,* 445 F.3d 1054, 1056 (8th Cir. 2006) (holding that the regulation's language "indicates that only the initial denial of benefits is an 'adverse benefit determination'"); *Marajh v. Broadspire Servs., Inc.*, No. 07-60975-CIV-ZLOCH, 2008 WL 5063870, at *8 (S.D. Fla. Nov. 21, 2008) ("[The] decision . . . to uphold the initial adverse benefit determination was not itself another adverse benefit determination."); *see also* 29 C.F.R. § 2560.503-1(a), (e), (g) (providing that "***adverse benefit determination***" pertains to a "***claims for benefits***" by participants and beneficiaries" (i.e. "claimants") and defining a "claim for benefits" as "a request for a plan benefit or benefits made by a claimant in accordance with a plan's reasonable procedure for filing benefit claims.").

None of the cases on which HDL relies suggest otherwise.  (Def. Br. at 9-10.)  Two of these cases offer no opinion on the matter.  *See Premier Health Ctr., P.C. v. UnitedHealth Group*, 292 F.R.D. 204, 223 (D.N.J. 2013) (in deciding whether to certify a class, holding that "***whether*** an overpayment determination against a provider for out of network services amounts to an ABD" was a common question but suggesting no answer); *Porter v. Anthem Health Plans of Ky., Inc.*, No. 10-8-HRW, 2010 U.S. Dist. LEXIS 25791, at *9 (E.D. Ky. Mar. 18, 2010)

---

[17]    At a minimum, HDL's request to dismiss Cigna's overpayment claim as a premature ABD is inappropriate at the motion to dismiss stage.  *See Conn. Gen. Life Ins. Co. v. Roseland Ambulatory Ctr. LLC*, No. 2:12-CV-05941 DMC, 2013 WL 5354216, at *3 (D.N.J. Sept. 24, 2013)  (refusing to dismiss overpayment demand action as premature ABD and noting that "a more complete factual picture [is] needed to resolve the issue.").

(denying the provider-plaintiffs' remand motion without mentioning the question of whether an overpayment recovery action constituted an ABD). And while the district court in *Pennsylvania Chiropractic Association v. Blue Cross Blue Shield Association* ("*Penn. Chiropractic II*"), No. 09 C 5619, 2014 WL 1276585, at *13 (N.D. Ill. Mar. 28, 2014) found at trial that the defendant's ***offsetting*** constituted an ABD, the same court previously held that "there are considerable individual questions that determine the issue of whether a repayment demand is an adverse benefit determination," because, depending on the circumstances, "repayment demands ***may not constitute adverse benefit determinations***." *Penn. Chiropractic I*, 286 F.R.D. at 367. In fact, the court found that "many [such] disputes between providers and insurance companies . . . ***do not constitute adverse benefit determinations***," including where the provider could not balance bill the member. *Id.* at 365.

Here, Cigna affirmatively seeks recovery of overpayments already made, rather than "withholding or reducing" payments for future claims, and HDL has agreed that it will not balance bill members for any amounts that Cigna does not pay.[18] *Pennsylvania Chiropractic II* therefore does not apply.[19] HDL's argument that Cigna's current practice of denying HDL's benefits claims constitutes offsetting is similarly misplaced. (Def. Br. at 10.) As alleged in the Complaint, Cigna is denying HDL's claims because they are based on phantom charges, not

---

[18]   *Bolduan v. Life Insurance Co. of North America*, No. 12-CV-1003, 2012 WL 6553807 (E.D. Wis. Dec. 14, 2012), and *Cherene v. First American Financial Corp. Long-Term Disability Plan*, 303 F. Supp. 2d 1030 (N.D. Cal. 2004), (*see* Def. Br. at 10), are inapposite for the same reason, as both involved an insurer's offsetting of benefits where the beneficiary had received payment from another source. *See Bolduan*, 2012 WL 6553807, at *4 ("Bolduan should have received her notice when the offset was initiated."); *Cherene*, 303 F. Supp. 2d at 1037 (insurer "failed to provide certain documents . . . regarding the claimed offsets").

[19]   Moreover, at least two federal courts have repudiated the rationale underlying the decision in *Pennsylvania Chiropractic II*. *See, e.g.*, *D.B. Healthcare, LLC v. Blue Cross Blue Shield of Ariz.*, No. 2-13-cv-01558-NVW, 2014 WL 3349920, at *11 (D. Ariz. July 9, 2014) ("*Pennsylvania Chiropractic*'s conclusion regarding 'benefits' is incorrect and contrary to the weight of authority. Indeed, it appears to be the only case ever to reach this conclusion."); Ex. 3 to Pitblado Decl., Tr. of Hearing at 85:15, *Rojas, et al. v. Cigna Health & Life Ins., et al.*, 14-cv-6368(KMK) (S.D.N.Y. Sep. 15, 2014) (*Pennsylvania Chiropractic II* is "on some kind of on an island.").

because Cigna seeks to recoup the overpayments made on previously adjudicated benefits. (Compl. ¶¶ 43, 48.)

## III.   CIGNA'S CLAIM FOR DECLARATORY JUDGMENT STANDS.

HDL's brief offers no explanation for why Cigna's request for declaratory judgment (Count VII) should be dismissed.   Accordingly, at a minimum, this claim should survive the pleading stage.   *See Kaminski v. Hayes*, No. 306CV1524CFD, 2009 WL 3193621, at *2 (D. Conn. Sept. 30, 2009) ("The court does not address this argument as defendants have failed to adequately brief it."); *Schmitt vs Gen. Elec. Co.*, No. CIV. 3:06CV726PCD, 2007 WL 1245312, at *6 (D. Conn. Apr. 25, 2007) (where "Defendant failed to brief [an] issue" in their motion to dismiss, "the Court [would] not address this argument.").

<u>**CONCLUSION**</u>

For the foregoing reasons, HDL's motion to dismiss should be denied in its entirety.  To the extent the Court believes that Cigna has not adequately alleged any of its claims, Cigna respectfully requests leave to amend to cure any pleading defect.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to replead] when justice so requires.").

DATED this 9th day of April, 2015.

*/s/ John C. Pitblado*

James M. Sconzo (ct04571)
John C. Pitblado (ct25563)
CARLTON FIELDS JORDEN BURT, P.A.
One State Street, Suite 1800
Hartford, Connecticut  06103
Telephone:  860.392.5022
Facsimile:  860.392.5058
jsconzo@cfjblaw.com
jpitblado@cfjblaw.com

Joshua B. Simon*
Warren Haskel*
Andrew C. Orr*
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10016
Telephone:  212.446.4800
Facsimile:  212.446.4900

*Counsel for Plaintiffs*

*\* Admitted Pro Hac Vice*

33

## CERTIFICATION OF SERVICE

I hereby certify that on April 9, 2015, a copy of foregoing Opposition to Defendant's Motion to Dismiss the Amended Complaint was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


/s/ *John C. Pitblado*
John C. Pitblado