**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

_____

|  |  |  |
|---|---|---|
| | : | |
| CONNECTICUT GENERAL LIFE | : | |
| INSURANCE COMPANY; CIGNA | : | |
| HEALTH AND LIFE INSURANCE | : | |
| COMPANY | : | |
| | : | CIVIL NO. 3:14-cv-01519-VAB |
| Plaintiffs/Counter-Defendants, | : | |
| | : | May 11, 2015 |
| v. | : | |
| | : | **JURY TRIAL DEMANDED FOR** |
| | : | **CLAIMS AT LAW** |
| HEALTH DIAGNOSTIC LABORATORY, INC. | : | |
| | : | |
| Defendant/Counter-Plaintiff. | : | |

_____ :

**HEALTH DIAGNOSTIC LABORATORY, INC.'S COUNTERCLAIM FOR DAMAGES
AND EQUITABLE RELIEF AGAINST CONNECTICUT GENERAL LIFE INSURANCE
COMPANY AND CIGNA HEALTH AND LIFE INSURANCE COMPANY**

Defendant/Counterclaim-Plaintiff Health Diagnostic Laboratory, Inc. ("HDL") now

brings the following Counterclaim against Connecticut General Life Insurance Company and

Cigna Health and Life Insurance Company (collectively "Cigna")[1] and alleges as follows:

**INTRODUCTION**

1.     HDL is a specialty laboratory that provides innovative diagnostic laboratory tests

that enable the early and effective treatment of cardiovascular disease, diabetes and other chronic

and severe medical conditions.  These chronic diseases are also the leading driver behind health

care costs, with the cost of medical treatment for heart disease and stroke exceeding $190 billion

in 2010.  AMERICAN HEART ASSOCIATION, *AHA Statistical Update:  Heart Disease and Stroke*

---

[1] HDL reserves its right to join the plans to this counterclaim or to bring additional claims
against the plans at a later date.

*Statistics—2014 Update*, at 255, *available at* http://circ.ahajournals.org/content/early/2013/12 /18/01.cir.0000441139.02102.80.full.pdf (last visited May 7, 2015).  By 2030, such costs are estimated to reach nearly $1 trillion.  *Id.*

2.      HDL was formed in 2008.  As doctors recognized the value of HDL's innovative testing, HDL's business grew rapidly to the point that it provided laboratory services for patients of medical providers located across the country.

3.      Cigna is a multinational corporation in the business of selling life, health, and other forms of insurance.  While Cigna's brochures and public statements purport to care about the health and well being of its members, Cigna's principal concern is its own financial bottom line.  It is pursuing a strategy in which health care providers who have not entered into contracts with it on terms that it demands (an "out-of-network provider") should not be compensated for services performed, because Cigna is allegedly injured by having to pay for services out-of-network.

4.      In 2014, Cigna took in $34.9 billion dollars in revenue, with $2.1 billion dollars in net income.  This money is gained, in part, through denying valid claims for covered services, such as those owed to HDL, and attempting to shut down providers and laboratories that operate outside of Cigna's exclusive provider network, to the detriment of the patients in particular, and healthcare in general.

5.      As part of its business model, Cigna contracts with medical providers and large laboratories to be part of its network.  Notwithstanding HDL's desire and efforts to become a member of Cigna's network, Cigna has refused to permit HDL's admission in its network, choosing instead to try to direct members of the plans Cigna administers or insures to use larger in-network laboratories with which Cigna has financially advantageous contracts.  The effect of

these contracts is to restrict local or smaller laboratories from becoming part of Cigna's network. As a result, HDL is not under contract with Cigna and does not participate in its provider networks.

6.     HDL provides testing, as an out-of-network provider, to patients who are members of various employee benefits plans or other arrangements that Cigna insures and/or administers.

7.     With respect to the laboratory services provided under the plans, plan participants and beneficiaries assigned their claims to HDL, so that HDL could collect payment directly from Cigna.  On the members' behalf, HDL billed Cigna for physician-ordered services.  Cigna routinely paid HDL less than the amount billed by HDL based on Cigna's determination of the value of the service.

8.     The number of claims for advanced laboratory services prescribed and ordered by physicians and rendered by HDL to members of employee benefit plans administered or insured by Cigna were significant.  From August 2010 to December 2012, HDL submitted nearly 63,000 claims to Cigna.  Cigna processed those claims, and for just about all of them, determined that the tests were medically necessary.

9.     In 2013, Cigna acted unilaterally to cause the plans administered or insured by Cigna to stop or severely reduce payments to HDL for its services.  Cigna did this under the theory that because HDL did not appear to be collecting co-pays and deductibles from plan members, Cigna could unilaterally impose an obligation on the plan members to pay for HDL's services before Cigna would process the claims, even though HDL was unable to determine patient responsibility until Cigna had processed and adjudicated those claims to indicate that very responsibility.

10.     Cigna's unilateral action violated the terms of the plans and treated similarly situated plan beneficiaries differently (that is, some were required to pay for the same laboratory services provided by HDL up front and then be reimbursed, and others receiving the same service from a  different provider, whether or not in-network, did not).  And Cigna was wholly inconsistent in its application of this arbitrary policy, sometimes providing nominal reimbursements of small percentages of the amounts claimed by HDL.  At least one Circuit Court has expressed doubts about Cigna's actions.  *North Cypress Medical Center Operating Co., Ltd., et al. v. Cigna Healthcare, et al.*, 781 F.3d 182, 196 (5th Cir. 2015) (calling into serious question whether ordinary plan members who read plan language purporting to exclude all charges where co-insurance was not collected would understand that language to "*condition* coverage on the collection of coinsurance, rather than simply describing the fact that the insurance does not cover all of a patient's costs") (emphasis in original).

11.     Cigna has engaged in similar behavior with other out-of-network health care providers around the country, in each case, accepting the benefit of medical care for its members, but refusing to pay for that benefit.

12.     On October 15, 2014, Cigna filed the underlying action in this case, signaling its intent to recover the payments for services actually rendered and already made to HDL.

13.     In filing its action, Cigna asserted that it is a fiduciary within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et. seq. with respect to various health care plans and arrangements.

14.     Cigna's unilateral denial of benefit claims across its whole network threatens the existence of smaller health care providers and limits the options of physicians seeking to provide

medically necessary treatments to their patients, which is not in the best interest of the members of the health care plans insured or administered by Cigna.

15.     Cigna's unilateral actions in withholding payment for services already performed was imprudent and further constituted an improper adverse benefit determination and an impermissible reduction of the benefits due under ERISA, without any of the procedural safeguards mandated by the statute.

16.     By its unlawful refusal to allow payments to HDL and others for valid physician-ordered services, Cigna has caused substantial injury to health care consumers in Connecticut and elsewhere by depriving them of their right to the use of the health care provider selected by their treating physician and preventing them from using insurance benefits for which they have paid premiums.  Cigna has also damaged HDL and other out-of-network health care providers by depriving them of payment to which they are entitled for the services they performed for Cigna's members.

17.     By filing these claims, HDL seeks to vindicate its rights as a beneficiary of Cigna's ERISA plans, recover payment of benefits for services rendered and to ensure Cigna's future adherence to ERISA requirements related to adverse benefit determinations.

## PARTIES

18.     Counterclaim Plaintiff HDL is a Virginia corporation with its principal place of business in Richmond, Virginia.

19.     Counterclaim Defendant Connecticut General Life Insurance Company is a company organized under the laws of the State of Connecticut, with its principal place of business in Connecticut.

20.     Counterclaim Defendant Cigna Health and Life Insurance Company is a company organized under the laws of the State of Connecticut, with its principal place of business in Connecticut.

## JURISDICTION AND VENUE

21.     This Court has personal jurisdiction over Cigna pursuant to ERISA and because Cigna has subjected itself to this Court's jurisdiction by filing the underlying claim in this action.

22.     This Court has subject matter jurisdiction over HDL's claims pursuant to 28 U.S.C. § 1331 because it arises under the Constitution, laws, or treaties of the United States. Specifically, HDL asserts claims in this case that arise under ERISA.

23.     Venue is proper in the District of Connecticut under 28 U.S.C. § 1391(b), because Cigna conducted and continues to conduct business in Connecticut.  Moreover, the electronic claims submitted by HDL to Cigna are routed through Cigna's headquarters in Bloomfield, Connecticut.  Venue is also proper pursuant to 29 U.S.C. § 1132(e)(2), because plans at issue are administered in this District.

## FACTUAL BACKGROUND

24.     The claims at issue in this Counterclaim arose from 2013 to the present and number in the thousands and, on information and belief, involve hundreds of different plans.

25.     On information and belief, most of the plans at issue are funded by employers, with Cigna acting only as the claims administrator, pursuant to Administrative Services Only ("ASO") agreements.  Some of the plans are fully insured by Cigna.  Cigna purports to act as a plan fiduciary for employer-funded plans.

26.     With respect to the ASO plans, Cigna collects fees from plan sponsors for providing access to Cigna's participating provider network and for other services and programs.

27.     With respect to its participating network providers, Cigna contracts with select health care professionals, hospitals, laboratories, pharmacies, and other facilities to provide health care services and supplies to plan members.  In some cases, Cigna contracts directly with the providers.  In other cases, Cigna contracts with third parties for access to their provider networks and in still other cases, Cigna enters into alliances with regional managed care organizations to gain access to their provider networks.

28.     Cigna contracts with the in-network providers to provide services at an agreed price in exchange for having access to members of plans administered or insured by Cigna.

29.     On multiple occasions, Cigna has rebuffed HDL's efforts to join Cigna's network.

30.     Although there may be additional cost-sharing obligations for out-of-network services, most plans permit ordering physicians to select the provider best able to meet the needs of a given patient, based on that physician's judgment of medical necessity, and regardless of the providers' network status.  And Cigna's actions are not in the best interests of plan members when applied to out-of-network providers such as HDL that are willing to accept payment at the in-network rate.

31.     Cigna has no contract with out-of-network providers, such as HDL, and thus no contractual obligation exists that requires the out-of-network provider to bill or collect the additional cost sharing.

32.     The obligation, to the extent it even exists, to pay co-pays, deductibles or coinsurance obligations rests exclusively with the plan member.

33.     During the period 2010 through 2012, Cigna processed and paid thousands of claims by HDL for laboratory services provided by HDL to members of Cigna's ASO and fully

insured plans.  In so doing, Cigna determined that the claims were for medically necessary laboratory services.

34.     During that same period, and up through the present, the procedure utilized by HDL to process and handle claims remained essentially the same.  If a physician determined that a laboratory test offered by HDL was medically necessary, the physician would order HDL's tests pursuant to a requisition form, which contained an assignment of benefits.

35.     The requisition forms and the patient blood samples would then be sent to HDL, which would conduct the ordered laboratory tests, provide the results to the physician, and process the claim for payment.

36.     Typically, HDL uses an electronic clearinghouse to process all of its claims.  The clearing house directs the claims to the proper payor, such as Cigna.

37.     At times, Cigna employed third-party re-pricing agents.  The re-pricing agents, acting on behalf of Cigna, entered into agreements with HDL to pay negotiated amounts for particular claims (the "Third-Party Agreements").  The Third-Party Agreements provided that "[b]y signing this agreement, Provider [HDL] accepts this Proposed Amount and agrees to reduce the liability of the Patient and Payor.  Provider agrees not to bill the Patient, or financially responsible party, for the difference between the Billed Charges and the Proposed Amount."

38.     While the Third-Party Agreements provided that HDL retains the right to bill the patient for items not covered under the patient's benefit plan and for any applicable co-pays, deductibles or co-insurance, it did not obligate HDL to do so.

39.     In other circumstances, HDL's billing department personnel would speak with Cigna representatives and agree to accept payment at the "in-network rate."

40.     In still other circumstances, Cigna would provide an electronic explanation of benefits ("EOB") to HDL, which would describe the claimed amount, the allowed amount and the amount Cigna was paying for the claim.  The EOB would also state the total deductible amount, the total co-insurance and the total co-payment.  HDL received the EOB at or around the same time that Cigna paid the claim.  The paid amount was typically 42% to 50% of the billed amount.  The EOB did not contain language making Cigna's payment conditioned on HDL billing or collecting any of the so-called cost sharing amounts.

41.     In February 2013, HDL received a letter from Cigna's associate General Counsel indicating that Cigna was imposing a new obligation on the submission of claims by HDL. Specifically, Cigna stated:

> Whenever HDL submits a claim for medical benefits to Cigna, Cigna will expect HDL to provide Cigna with documentary proof of the Cigna Customer's payment for the service(s) at issue as required under the Cigna customer's benefit plan.  That proof should consist of a credit card receipt, a cancelled check, or some other form of documentation showing that the Cigna customer actually incurred and personally paid the expense, and that HDL did not waive or forgive the Cigna customer's cost share obligation.  Since HDL can access the benefits information for its Cigna customers, HDL should be able to calculate Cigna's customer's cost share obligation.

42.     The ASO plan attached as Exhibit B to Cigna's Amended Complaint does not require plan members to pay at the time of service in order to obtain benefits under the plan. Instead, the plan states that "Out-of-Network claims can be submitted by the provider if the provider is able and willing to file on your behalf."  (Dkt. 40-2, p. 9 of 67).  With respect to out-of-network claims, the plan provides that "Cigna will consider claims for coverage under our plans when proof of loss (a claim) is submitted within 180 days for Out-Of-Network benefits after services are rendered."

43.     By its unilateral modification of the plans, and in contravention of the plans' terms, Cigna required the beneficiaries to pay for the full amount of the laboratory services that HDL provided before seeking reimbursement from Cigna.  Cigna acted illegally and outside the scope of its authority when it imposed this new obligation on plan members to actually pay for the laboratory service at the time of service.

44.     On information and belief, Cigna never informed the affected plan members of the change in the plan, as required by ERISA.

45.     In 2013, Cigna stopped paying the vast majority of HDL's claims and drastically reduced payments on others.  With respect to denials, Cigna's explanation of benefits generally contained the following or similar language:  "CIGNA WILL RECONSIDER THIS CLAIM ONCE WE SEE PROOF OF PAYMENT."  Contrary to Cigna's assertions, HDL had no way to determine a member's additional cost sharing amount absent Cigna's processing and adjudication of HDL's claims to indicate the allowed amount and the patient's cost sharing amount, and so by definition, no such payment could ever be collected.

46.     Cigna now attempts to justify its failure to pay as an attempt to collect alleged overpayments on earlier submitted claims by withholding or "offsetting" payments on a new and different claim.  On October 15, 2014, Cigna filed the underlying suit in this case, likewise in an attempt to recoup.  A list of submitted, unreimbursed claims with amounts is attached as Exhibit A hereto.[2]  Cigna has withheld reimbursement from HDL for valid submitted claims, causing damages in an amount to be proved at trial and, as of the date of this filing, in excess of $66 million.  *See* Ex. A.  On information and belief, Cigna continues to deny HDL's valid submitted claims, to HDL's continued detriment and damage.

---

[2] In order to address HIPAA identifiers, HDL has filed a redacted version herewith and has produced an unredacted version to Cigna.

## CIGNA'S RECOUPMENT EFFORTS

47.     Under ERISA, Cigna is required, among other things, to accord plan beneficiaries, such as HDL, an opportunity to obtain a "full and fair review" of any denied or reduced reimbursements and to make appropriate and non-misleading disclosures to their members or treating providers.  Such disclosures include accurately setting forth plan terms; explaining the specific reasons why a claim is denied and the internal rules, protocols, and evidence that underlie such determinations; disclosing the basis for its interpretation of plan terms; and providing appropriate data and documentation concerning its coverage decisions.

48.     Cigna violated ERISA by failing to disclose the reimbursement rules used to reduce benefits, by making retroactive benefit claim denials without proper disclosure or following required procedures, and by improperly recouping benefits or suing for repayment of benefits that were rightfully paid to HDL.

49.     Under ERISA, the term "adverse benefit determination" means any of the following:

> a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial, reduction, termination, or failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan, and including, with respect to group health plans, a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit resulting from the application of any utilization review, as well as a failure to cover an item or service for which benefits are otherwise provided because it is determined to be experimental or investigational or not medically necessary or appropriate.

29 C.F.R. § 2560.503–1(m)(4).

50.     Cigna's attempts to recoup alleged overpayments as applied to HDL clearly constitute "Adverse Benefit Determinations" under ERISA.  The offset by withholding payment on new claims submitted by HDL constitutes a "reduction" in benefits or "a failure to provide or

make payments (in whole or in part) for a benefit."  And Cigna, through its suit filed in this Court, attempts to retroactively deny or reduce benefits already paid to HDL.

51.    ERISA establishes that certain steps must be followed once an "Adverse Benefit Determination" is reached, including (1) timely notice of an adverse benefit determination; (2) the right to appeal the determination; and (3) a "full and fair review" of the appeal, all within clear and explicit timing requirements.  29 C.F.R. § 2560.503–1(h).

52.    Cigna's unilateral imposition of an Adverse Benefit Determination on HDL violated this requirement under ERISA.

53.    After making benefit determinations, pursuant to which it found that the services at issue were Covered Benefits of its health care plans and subsequently paid benefits to HDL, Cigna reversed its coverage decisions.  Cigna failed to follow ERISA notice and opportunity to be heard procedural requirements for each retroactively denied claim and instead simply ceased or drastically reduced all further payments, even though HDL continued to provide services to physicians treating Cigna patients.

54.    Because of Cigna's failure to comply with the steps required under ERISA to enforce an adverse benefit determination, its actions in demanding recoupment are invalid and unenforceable, and its coverage determinations should be deemed to be arbitrary and capricious.

55.    In light of Cigna's filing of the Complaint in an attempt to recoup payments previously made to HDL, any attempt by HDL to file a claim under ERISA would be futile and must be excused.  S*ee Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 133 (2d Cir. 2001) (failure to exhaust administrative remedies should be excused "where claimants make a clear and positive showing that pursuing available administrative remedies would be futile").

56.     Even were Cigna to have complied with its procedural obligations under ERISA, it has no legal right to recoup or pursue repayment of such funds paid to HDL, based on retroactive adverse benefit determinations.  In its lawsuit and through the device of benefit offsets, Cigna seeks restitution under ERISA.  Yet, ERISA does not permit restitution unless the assets at issue are easily identified and separate from other assets, which funds dispersed to HDL are not.  HDL obtained the funds in good faith and expended them or otherwise acted based on the assumption that such payments were proper.  In these circumstances, ERISA does not permit restitution.  Accordingly, HDL's seeks clarification and enforcement of its rights relative to past and future benefits under ERISA.

57.     Furthermore, to the extent Cigna has withheld payment for valid claims submitted for payment to plans not governed by ERISA, HDL seeks equitable relief under Connecticut state law for the amount of the benefit conferred on Cigna by HDL's provision of medical services to Cigna's members.

## CIGNA'S PATTERN OF ACCEPTING BENEFITS WITHOUT PAYMENT

58.     Examination of Cigna's litigation history reveals that the offsets it has imposed on HDL are not an isolated incident, but are instead part of a pattern of behavior that serves to cause substantial injury to Connecticut health care consumers and out-of-network medical providers across the nation.

59.     On information and belief, Cigna has withheld payment from multiple out-of-network health care providers while continuing to accept the benefit of the provision of services in several separate schemes since 2012.  In each of these incidents, the claims at issue were received and processed in Connecticut, and Cigna reached the decision to withhold payment in Connecticut.

## COUNT I
## COUNTERCLAIM FOR BENEFITS DUE
## UNDER GROUP PLANS GOVERNED BY ERISA

60.     The allegations contained in this Counterclaim are re-alleged and incorporated by reference as if fully set forth herein.  Count I is brought under 29 U.S.C. § 1132(a)(1)(B).

61.     Pursuant to the terms of the plans, Cigna must pay to HDL an amount to be proved at trial and, as of the date of this filing, in excess of $66 million, which represents the value of benefits for unreimbursed services provided to date to members covered under the Cigna plans, whether insured, funded or administered by Cigna.

62.     Cigna unilaterally and without authority amended the plans and imposed obligations on the plan beneficiaries to pay for laboratory services provided by HDL before receiving benefits under the plans.

63.     Cigna took action without providing the beneficiaries with the reporting and disclosure, or procedural safeguards for effecting adverse benefit determinations required by 29 U.S.C. § 1133.

64.     Cigna as claims administrator imposed an unfair and non-uniform construction of the plans' terms.

65.     By imposing the obligation that the plan member pay for HDL's services before receiving benefits, Cigna unilaterally withheld these payments in an attempt to offset previously paid benefits without complying with the procedural safeguards required by ERISA for effecting adverse benefit determinations.

66.     Cigna violated its legal obligations under ERISA and federal common law each time it withheld benefits through the practices detailed herein without complying with ERISA's

requirements for effecting adverse benefit determinations.  Any attempt by Cigna to engage in such a process now would be futile.

67.    Due to Cigna's failure to comply with ERISA in pursuing recoupment efforts, it is estopped from pursuing such efforts and, further, is required to repay HDL any benefits unilaterally withheld by Cigna in order to offset sums that Cigna demanded be repaid.  Cigna is further estopped from making adverse benefit determinations without complying with ERISA.

68.    ERISA precludes Cigna's recoupment efforts, as they do not satisfy the requirements for equitable restitution.

69.    HDL therefore seeks unpaid benefits is an amount to be proved at trial and, as of the date of this filing, in excess of $66 million, interest back to the date its claims were originally submitted to Cigna, withdrawal of all claims for restitution or other relief against HDL, and repayment of any amounts withheld from HDL by Cigna.  HDL further requests attorneys' fees, costs, prejudgment interest and all other appropriate relief against Cigna.

**COUNT II**
**COUNTERCLAIM TO ENFORCE AND CLARIFY HDL'S RIGHTS, TO ENJOIN**
**VIOLATIONS OF ERISA PLAN TERMS OR FOR OTHER EQUITABLE RELIEF**
**UNDER ERISA**

70.    The allegations contained in this Counterclaim are re-alleged and incorporated by reference as if fully set forth herein.  Count II is brought under 29 U.S.C. § 1132(a)(1)(B) or, in the alternative, under 29 U.S.C. § 1132(a)(3).

71.    Cigna forcibly recouped benefits from unrelated claims to apply toward its alleged overpayment, without any authority or validation, and sought to compel further repayment through lawsuits, amounting to adverse benefit determinations without administrative safeguards as required by ERISA.

72.     Cigna has no legal basis upon which to pursue recoupment from HDL or the patients it serves, but is merely seeking to coerce payments for retroactive adverse benefits determinations.

73.     HDL therefore seeks appropriate declaratory and injunctive relief to enforce HDL's rights as a beneficiary by assignment under ERISA and requests that this Court order Cigna to return any funds it has received or withheld from HDL as a result of its recoupment efforts.

74.     HDL also seeks appropriate declaratory and injunctive relief to clarify HDL's rights as a beneficiary by assignment under ERISA to receive future benefits and enjoin Cigna from pursuing its efforts to coerce recoupment or otherwise compel payment.

75.     HDL also seeks, as a beneficiary by assignment of Cigna's ERISA plans, declaratory and injunctive relief against Cigna's unilateral re-writing of ERISA plans to require plan participants to pay for HDL services prior to receiving plan benefits.  In so doing, on information and belief, Cigna acted outside of and in contravention of ERISA plan terms.  HDL now asks that this Court enjoin Cigna's violations and order Cigna to return any funds it has withheld from HDL on the basis of its arbitrarily re-written plan terms.

76.     HDL further requests attorneys' fees, costs, prejudgment interest and all other appropriate relief against Cigna.


**COUNT III**
**COUNTERCLAIM FOR EQUITABLE RELIEF FOR UNJUST ENRICHMENT**
**UNDER CONNECTICUT STATE LAW**

77.     The allegations contained in this Counterclaim are re-alleged and incorporated by reference as if fully set forth herein.

78.     For claims submitted under non-ERISA plans or claims otherwise not subject to ERISA, Cigna has been unjustly enriched by HDL's provision of physician-ordered services for which no reimbursement has been remitted.

79.     Cigna received a benefit by the provision of these services as it was spared the cost of reimbursement to HDL or an alternate health care provider while avoiding the expense of claims appeals and loss of member goodwill inherent to a formal claim denial.

80.     Cigna's plans, by their terms, are required to cover some portion of the actual charges for services that plan members receive from out-of-network providers like HDL, and Cigna's public statements affirm that it provides coverage even if members go out-of-network. HDL did in fact provide services to physicians treating Cigna members, valued as of the date of this filing in excess of $66 million.  Cigna's failure to provide payment for some portion of the services ordered by physicians from HDL for the treatment of Cigna's members was therefore unjust.

81.     Cigna's failure to provide reimbursement was detrimental to HDL in that it incurred the costs of providing the services in question—in terms of the cost associated with use and consumption of materials used in that process, expenditure of employee time and effort, and cost of capital—without receiving any payment for those efforts, services, or investments.

82.     Therefore, it would be inequitable for Cigna to retain these benefits, and HDL must be reimbursed for the value of testing provided to Cigna members.

## COUNT IV
## COUNTERCLAIM FOR EQUITABLE RELIEF FOR UNJUST ENRICHMENT UNDER CONNECTICUT STATE LAW

83.     The allegations contained in this Counterclaim are re-alleged and incorporated by reference as if fully set forth herein.

84.     For claims submitted under non-ERISA plans or claims otherwise not subject to ERISA, Cigna has been unjustly enriched by HDL's provision of physician-ordered services that provide early diagnosis of chronic and life-threatening diseases without payment, reducing the cost to Cigna plans of the treatment of chronic disease.

85.     Cigna received a benefit by the provision of these services as it was spared the cost of expensive treatment of these conditions once the disease progressed.  Early diagnosis permits less-expensive treatment through ameliorative lifestyle changes and early-stage medical intervention.

86.     Cigna's plans, by their terms, are required to cover some portion of the actual charges for services that plan members receive from out-of-network providers like HDL, and Cigna's public statements affirm that it provides coverage even if members go out-of-network. HDL did in fact provide services to physicians treating Cigna members, valued as of the date of this filing in excess of $66 million.  Cigna's failure to provide payment for some portion of the services ordered by physicians from HDL for the treatment of Cigna's members was therefore unjust.

87.     Cigna's failure to provide reimbursement was detrimental to HDL in that it incurred the costs of providing the services in question—in terms of the cost associated with use and consumption of materials used in that process, expenditure of employee time and effort, and cost of capital—without receiving any payment for those efforts, services, or investments.

88.     Therefore, it would be inequitable for Cigna to retain these benefits, and HDL must be reimbursed for economic savings conferred on Cigna from HDL's advanced medical testing or, in the alternative, Cigna must disgorge the profits it has obtained from uncompensated HDL services.

### COUNT V
### COUNTERCLAIM FOR ACTUAL AND PUNITIVE DAMAGES FOR UNFAIR TRADE PRACTICES UNDER THE CONNECTICUT UNFAIR TRADE PRACTICES ACT

89.     The allegations contained in this Counterclaim are re-alleged and incorporated by reference as if fully set forth herein.

90.     The elements of a claim under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b et seq., are (1) that a defendant engaged in unfair or deceptive acts or practices; (2) in the conduct of any trade or commerce; and (3) that the plaintiff suffered ascertainable loss of money or property as a result of the defendant's acts or practices.

91.     A practice is unfair if, (1) without necessarily having been previously considered unlawful, it offends public policy as it has been established by statutes, the common law, or otherwise, such that the practice "is within at least the penumbra of some common law, statutory, or other established concept of unfairness," *Zeebaas, LLC v.  Koelewyn*, No. 3:11cv11 (VLB), 2012 U.S. Dist. LEXIS 84665, at *17-18 (D. Conn. June 19, 2012); (2) it is immoral, unethical, oppressive, or unscrupulous; or (3) it causes substantial injury to consumers, competitors or other businesspeople.

92.     A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.

93.     A practice is deceptive if it involves actual deception.

94.     Cigna's practice of accepting the benefit of medical services provided to its members while withholding payment is an unfair practice.

95.     This practice offends public policy, including state and federal law, as detailed above and herein, including without limitation Connecticut's public policy against unjust enrichment, a common law cause of action.

96.     The practice is also immoral, unethical, oppressive, or unscrupulous, as it permits Cigna to obtain a benefit without providing payment in return.

97.     The practice also causes substantial injury to consumers by exposing them to liability for unpaid claims and by reducing their options for medical services and thus harming competition.

98.     The practice also causes substantial injury to other businesses since Cigna has directed this behavior toward other out-of-network providers around the country, establishing a clear pattern of conduct whose effect can only be to harm out-of-network providers and the overall quality of patient care.

99.     The practice is also deceptive as Cigna permits claims to go forward, allows the work to be performed, and then withholds payment.

100.    The practice is performed in the conduct of trade or commerce because it involves the "distribution of any service[] . . . in [Connecticut]."  Conn. Gen. Stat. § 42-110a.  The claims at issue involved the distribution of medical services and payment of insurance benefits.  The practice occurred in Connecticut both because, on information and belief, some of the patients who received services for which HDL's remuneration was withheld lived and received test results in Connecticut, and also because the claims at issue were submitted to Cigna, received by

Cigna, and processed by Cigna in Connecticut, and also because Cigna reached the decision to withhold payment in Connecticut.

101.    HDL and other businesses engaged in the provision of similar services have suffered an ascertainable loss of money or property as a result of Cigna's practice.  HDL has suffered a loss in an amount to be proved at trial and, as of the date of this filing, no less than $66 million, due to performing tests for which it has not been reimbursed.  On information and belief, other similarly situated businesses have suffered similar losses because of Cigna's practice.

102.    HDL therefore seeks actual damages in an amount no less than $66 million, interest back to the date its claims were originally submitted to Cigna, as well as any punitive damages this Court sees fit to award.  HDL further requests attorneys' fees, costs, prejudgment interest and all other appropriate relief against the Cigna.

## DEMAND FOR JURY TRIAL

103.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, HDL demands a trial by jury of the claims at issue in this action, to the extent they constitute claims at law.

## PRAYER FOR RELIEF

**WHEREFORE**, HDL demands judgment in its favor against Cigna as follows:

A.      Declaring that Cigna failed to provide a "full and fair review" to HDL under 29 U.S.C. § 1133, and awarding injunctive, declaratory and other equitable relief to ensure compliance with ERISA and its regulations;

B.      Ordering Cigna to recalculate and issue unpaid benefits to HDL that were unpaid or underpaid as a result of Cigna's actions, as detailed herein, with interest;

C.      Enjoining Cigna from continuing to pursue its recoupment efforts as detailed herein, and ordering it to pay proper benefits in the form of a return of any sums previously withheld from HDL as part of Cigna's recoupment efforts, plus interest;

D.      Enjoining Cigna from its practice of arbitrary imposition of new requirements on providers and plan participants in violation of plan terms and ordering Cigna to repay any funds withheld under such requirements;

E.      Ordering Cigna to reimburse HDL for the benefits it has unjustly retained from HDL's testing, with respect to claims submitted under non-ERISA plans or claims otherwise not subject to ERISA;

F.      Awarding HDL damages suffered because of losses caused by Cigna's business practices, as well as any punitive damages this Court sees fit to grant, with respect to claims submitted under non-ERISA plans or claims otherwise not subject to ERISA;

G.      Awarding HDL the costs of this action, including reasonable attorneys' fees, pre-judgment interest, and post-judgment interest, in amounts to be determined by the Court; and

H.      Granting such other and further relief as is just and proper.

DEFENDANT HEALTH DIAGNOSTIC LABORATORY, INC.,

By:    /s/ *Brien T. O'Connor*
    Brien T. O'Connor (admitted *pro hac vice*)
    Laura T. Hoey (admitted *pro hac vice*)
    Loretta R. Richard (admitted *pro hac vice*)
    Maria M. Carboni (admitted *pro hac vice*)
    Matthew A. Tolve (admitted *pro hac vice*)
    ROPES & GRAY LLP
    Prudential Tower
    800 Boylston Street
    Boston, MA 02199
    Email: brien.o'connor@ropesgray.com

    Michael G. Caldwell, ct26561
    Daniel W. Elliott, ct29058
    LeClairRyan, A Professional Corporation
    545 Long Wharf Drive, 9th Floor
    New Haven CT 06511
    Ph. (203) 672-1636
    Fax (203) 672-1656
    Email: michael.caldwell@leclairryan.com

## <u>CERTIFICATION</u>

I hereby certify that on May 11, 2015 a copy of the foregoing was filed electronically.

Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic

filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of

Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


/s/      *Brien T. O'Connor*
Brien T. O'Connor, Mass. Bar No. 546767